Avery, J.
There is no doubt in our minds that the court of common pleas erred in its charge to the jury in this case, in the respect excepted to by the prosecuting attorney.
Section 12819, General Code, since its amendment in 1917 (107 O. L., 28), reads as follows:
“Whoever carries a pistol, bowie knife, dirk, or other dangerous weapon concealed on or about his person shall be fined not to exceed five hundred dollars, or imprisoned in the county jail or workhouse not less than thirty days nor more than six moriths, or imprisoned in the penitentiary not less than one year nor more than three years. Provided, however, that this act (G. C. 12819) shall not affect the right of sheriffs, regularly appointed police officers of incorporated cities and villages, regularly elected constables, and special officers as provided by sections 2833, 4373, 10070, 10108 and 12857 of the General Code to go armed when on duty. Provided further, that it shall be lawful for deputy sheriffs and specially appointed police officers, except as are appointed or called into service by virtue of the authority of said sections 2833, 4373, 10070, 10108 and 12857 of the General Code to go armed if they first give bond to the state of Ohio, to be approved by the clerk of the court of common pleas, in the sum of one thousand dollars, conditioned to save the public harmless by reason of any unlawful use of such weapons carried by them; and any person injured by such improper use may have recourse on said bond.”
This statute is plain and unambiguous in its terms. It contains no exception in favor of place. *413 We are compelled to hold, therefore, that it makes punishable the carrying by an individual of one of the enumerated weapons, concealed about his person, even in his own home. Similar statutes in other states have been uniformly so construed and applied. Dunston v. State, 124 Ala., 89; Carroll v. State, 28 Ark., 99; Brown v. State, 114 Ga., 60; Commonwealth v. Walker, 7 Ky. L. R. (abstract), 218, and People v. Demorio, 123 App. Div., 665, 108 N. Y. Supp., 24.
Neither is the statute unconstitutional, as in conflict with Section 4, Article I of the Constitution of Ohio, when so construed. The statute does not operate as a prohibition against ‘carrying weapons, but as a regulation of the manner of .carrying them. The gist of the offense is the concealment. The constitution contains no prohibition against the legislature making such police regulations as may be necessary for the welfare of the public at large as to the manner in which arms shall be borne. The intent of Section 4, Article I of the Constitution of Ohio, is revealed by the language of that section itself: “The people have the right to bear arms for their defense and security; but standing armies, in the time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power.” And-its meaning becomes more apparent when considered in the light of the limitation imposed by the people upon the powers of the federal government by the 2d Amendment to the Constitution of the United States: “A well regulated Militia, being necessary to the security of a free State, the right of the *414 people to keep and bear arms, shall not be infringed.” The extent of such constitutional rights has been judicially defined in a number of cases, reference to a few of which will suffice: Aymette v. State, 21 Tenn., 154; Fife v. State, 31 Ark., 455; English v. State, 35 Tex., 473; City of Salina v. Blaksley, 72 Kans., 230, 3 L. R. A., N. S., 168, 115 Am. St. Rep., 196. We are thoroughly in accord with these decisions.
Somewhat illuminating in this connection, as applied to the particular facts in this case, is the language of Spear, J., in State v. Hogan, 63 Ohio St., 202, at 218 and 219: “The constitutional right to bear arms is intended to guarantee to the people in support of just government such right and to afford the citizen means for defense of self and property. While this secures to him a right of which he cannot be deprived, it enjoins a duty in execution of which that right is to be exercised. If he employs those arms which he ought to wield for the safety and protection of his country, his person and his property, to the annoyance and terror and danger of its citizens, his acts find no vindication in the bill of rights. That guarantee was never intended as a warrant for vicious persons to carry weapons with which to terrorize others. Going armed with unusual and dangerous weapons to the terror of the people is an offense at common law. A man may carry a gun for any lawful purpose, for business or amusement, but he cannot go about with that or any other dangerous weapon to terrify and alarm a peaceful people.”
Nor does the rule expressed in the maxim, *415 “Every man’s house is his castle,” prevent the statute from operating within an individual’s home. That maxim relates to the rights of an individual to defend his house against violence, and his person against death or great bodily harm within his house, to which expression was given by this court in State v. Peacock, 40 Ohio St., 333: “Where one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life.”
“In this sense, and in this sense alone, are we to understand the maxim that ‘Every man’s house is his castle.’ ” 1 Wharton on Criminal Law (11 ed.), Section 633.
The original sources in which we first find this maxim show that.such is its meaning: 3 Coke Inst., 161; Semayne’s Case, 3 Coke Rep. (Pt. V), 91; 1 Hawk. Pl. Cr., 489, ch. 28, Sec. 8.
Section 12819, General Code, falls within a proper exercise of the police power of the state, and the maxim above mentioned neither does nor can stay that police power at the threshold of an individual’s dwelling and prevent its operation in the control of his conduct therein in the respect that such conduct affects, or may affect, the health and safety of the public at large. In Dunston v. State, supra, Sharpe, J., said, at page 89: “One of the objects of the law is the avoidance of bad influences which the wearing of a concealed deadly weapon may exert upon the wearer himself, and which in that way, as well as by the weapon’s obscured con *416 venience for use, may tend to the insecurity of other persons.”
But it is not necessary to go so far as this to determine that the court erred in the case at bar, for the accused was not in his own home or on his own premises. True he slept on a particular bunk, and lived in a particular bunkhouse, but that bunkhouse was the property of his employer, and was provided by that employer for the use of the accused in common with some twenty or thirty other men quartered there during the term of their employment. . The accused had no right to exclude anyone from any part of that bunkhouse. It could hardly be said, then, to be his “castle,” in any sense of the term, unless we wish to suffer ourselves to be led astray by the charm of high-sounding words, instead of adhering to the principles of reason and sound sense. In a number of the states the legislatures have excepted from the operation of such statutes a carrying “on one’s own premises.” Under such a statute it was held that a laborer, living and working on the land of his employer, was not “on his own premises” so as to be exempt from the operation of the statute. State v. Terry, 93 N. C., 585.
It may be that the accused was justified in carrying a weapon under the conditions and circumstances existing, and under which he was working, at the steel plant at the time of his arrest, but those were matters to be availed of as a defense under Section 13693, General Code, which provides: “Upon the trial of an indictment for carrying a concealed weapon, the jury shall acquit the defend *417 ant if it appear that he was at the time engaged in a lawful business, calling or employment, and that the circumstances, in which he was placed, justified a prudent man in carrying such weapon for the defense of his person, property or family.” The fact that the accused lived and slept in the bunkhouse in question, and had for the time being no other place of abode, did not avoid the operation of Section 42819, General Code, or excuse its violation.
The court erred in its charge to the jury and the exceptions thereto by the prosecuting attorney are sustained.
Perhaps it may not be unfitting, now, to add that no claim was made in the presentation of this case, either in brief or argument, that there was no “carrying” under the particular facts revealed by the evidence. If that question had been raised it would be sufficient to say that one of the meanings of the word “carry” is “to have or bear upon or about one’s person * * * as, to carry a watch” (Standard Dictionary), and that courts have held, in applying statutes such as ours, that locomotion is not essential. Owen v. State, 31 Ala., 387; Thomas v. State, 9 Ala. App., 67, and Danal v. State, 14 Ala. App., 97.

Exceptions sustained.

Nichols, C. J., Jones, -Matthias, Johnson and Robinson, JJ., concur.