## The town of MIDDLETOWN *against* SAGE and others.

In 1672, the native *Indian* proprietors of *Middletown* executed a deed to the inhabitants of *Middletown,* whereby the grantors, for a full consideration paid by the grantees, gave, granted, bargained, sold and confirmed unto the grantees, all that tract of land within the following abutments, *viz. Wethersfield* bounds on the *North, Haddam* bounds on the *South,* and to run from the great river the whole breadth towards the *East* six miles, and from the great river towards the *West,* so far as the General Court of *Connecticut* had granted the bounds of *Middletown* should extend : *Habendum* the aforementioned tract of land, as it is bounded, with all the meadows, pastures, woods, underwood, stones, quarries, brooks, ponds, rivers, profits, commodities, appurtenances whatsoever belonging thereunto, unto the grantees, their heirs and assigns forever. In 1686, the General Court of the colony of *Connecticut* executed a patent to the proprietors of common and undivided lands in *Middletown,* whereby the former gave, granted, ratified and

*Middlesex,* July, 1830.

Hubbard *v.* Savage.

*Middlesex,*
*July, 1830.*

Middletown
*v.*
Sage.

confirmed to the latter all those lands, both meadows and upland, with their appurtenances, within these abutments, *viz. Wethersfield* bounds on the *North, Farmington* bounds and the commons on the *West, Haddam* bounds on the *South,* and the wilderness on the *East ;* the breadth from *Wethersfield* bounds on the *North,* being four miles *South* of the meeting-house in *Middletown ;* their bounds to run the whole breadth on the *West* side of *Connecticut* river five miles from the said *North* and *South* line, and to run on the *East* side of *Connecticut* river full six miles from the said river the whole breadth from *Wethersfield* bounds to *Haddam* bounds ; together with all the woods, upland, arable lands, meadows, pastures, ponds, havens, ports, waters, rivers, islands, fishings, huntings, fowlings, mines, minerals, quarries, and precious stones upon or within the said tracts of land, with all other profits and commodities thereunto belonging or in anywise appertaining.    *Connecticut* river, between *Wethersfield* and *Haddam* bounds, is an arm of the sea.   Held, 1. to be questionable, whether this river was included within the boundaries mentioned either in the *Indian* deed or in the colony patent ; but 2. if included, still by none of the terms used in those instruments, was the soil of the river conveyed. The title of an island formed upon the bed of a navigable river, is, *prima facie,* in the state.

THIS was an action of ejectment, for an island in *Connecticut* river.

The cause was tried at *Haddam, August* term, 1829, before *Bissell,* J.

The demanded premises consist of about thirty acres of land, situated in *Connecticut* river, at the distance of about twenty rods from the low-water mark on each side of the river.   At this place, the river is, and always has been, navigable, by vessels of large burthen ; is subject to the ebbing and flowing of the tide ; and is an arm of the sea.   The island has been wholly formed upon the bed of the river, and has risen out of the water within the last twenty-five years.

*Middletown* was incorporated as a town prior to the year 1660 ; and from that time until the year 1767, included within its limits all the territory now included in the present towns of *Middletown* and *Chatham.*   In 1767, the present town of *Chatham* was incorporated, and by its act of incorporation, was made to include all that part of the then town of *Middletown,* which lay *East* of *Connecticut* river, and nothing more.

The plaintiffs claimed title to the demanded premises from the colony of *Connecticut,* first, to the proprietors of the common and undivided lands in the town of *Middletown,* and secondly, from such proprietors to themselves.   The title of the colony of *Connecticut,* was admitted by the defendants.

To prove the transfer of the title from the colony to the pro- <span>*Middlesex,*<br>July, 1830.</span>
prietors of common and undivided lands in *Middletown*, the
plaintiffs produced in evidence a patent from the former to the Middletown
latter, the material parts of which are the following : " Whereas <span>*v.*<br>Sage.</span>
the general court of *Connecticut* colony have formerly granted
unto the proprietors, inhabitants of the town of *Middletown* in
said colony, all those lands, both meadows and upland, with
their appurtenances, within these abutments following, *viz.* on
*Wethersfield* bounds on the *North ;* on *Farmington* bounds,
and on the commons, on the *West ;* on *Haddam* bounds, on
the *South ;* and on the wilderness, on the *East ;* the breadth is
from *Wethersfield* bounds on the *North,* full four miles *South* of
the meeting-house of *Middletown ;* and to run the whole breadth
on the *West* side of *Connecticut* river, five miles from the said
*North* and *South* line ; and on the *East* side of *Connecticut*
river, their bounds to run full six miles from the said river, the
whole breadth from *Wethersfield* bounds to *Haddam* bounds :
the said lands having been, by purchase or otherwise, lawfully
obtained of the *Indian* native proprietors :" " Know ye, that
the governor and company of the colony of *Connecticut,* as-
sembled in general court, have given and granted, and by these
presents, do give, grant, ratify and confirm, unto Mr. *Giles
Hamlin,* &c. and the rest of the said present proprietors of the
township of *Middletown,* and their heirs and assigns forever,
and to each of them, in such proportion as they have already
agreed upon for the division of the same, all that aforesaid tract
of land, as it is butted and bounded, together with all the woods,
upland, arable lands, meadows, pastures, ponds, havens, ports,
waters, rivers, islands, fishings, huntings, fowlings, mines, mine-
rals, quarries and precious stones upon or within the said tracts
of land, with all other profits and commodities thereunto be-
longing, or in any wise appertaining."—" *To have and to hold*
the said tracts of land and premises, with all and singular
their appurtenances, together with the privileges, immu-
nities and franchises herein given and granted to the said
Mr. *Giles Hamlin, &c.* and the rest of the proprietors, in-
habitants of *Middletown,* their heirs and assigns forever, and
to their only proper use and behoof, according to the tenor of
His Majesty's manor of *East-Greenwich,* in the county of *Kent,*
in the kingdom of *England,* in free and common socage, and
not *in capite,* nor by knight's service ; they yielding and paying
therefore to our sovereign lord, the king, his heirs and success-

ors, only the fifth part of all the ore of gold and silver, which, from time to time, and at all times hereafter, shall be there gotten, had or obtained, in lieu of all rents, services, duties, and demands whatsoever, according to charter." This instrument bears date the 11th day of *March*, 1685–6.

As explanatory of this patent, the plaintiffs produced in evidence, a copy of a deed from sundry native *Indian* proprietors to the inhabitants of *Middletown*, dated the 24th day of *January*, 1672. This instrument, after referring to the gift, formerly made by *Sowheag*, the great sachem of *Mattabesett*, of a great part of the township of *Middletown*, to the Hon. Mr. *Haynes*, proceeded thus : " And now, for a further and full consideration, paid by" the grantees, the grantors " have given, granted, bargained, sold and confirmed, and by these presents, do fully and absolutely give, grant and confirm unto the said" grantees " all that tract of land within the following abutments, *viz.* on *Wethersfield* bounds on the *North*, on *Haddam* bounds on the *South*, and to run from the great river the whole breadth towards the *East* six miles, and from the great river towards the *West* so far as the general court of *Connecticut* hath granted the bounds of *Middletown* shall extend.—*To have and to hold* the aforementioned tract of land, as it is bounded, with all the meadows, pastures, woods, under-wood, stones, quarries, brooks, ponds, rivers, profits, commodities and appurtenances whatsoever belonging thereunto, unto the said grantees their heirs and assigns forever."

The transfer from the proprietors of common and undivided lands in *Middletown* to the plaintiffs, was duly proved, by a vote of such proprietors, passed *January* 9th, 1786 ; and no question was made in regard to it.

It was admitted, by the parties, that the boundaries described in the patent, and also in the *Indian* deed, were the true boundaries of the town of *Middletown*, as it existed prior to the incorporation of the town of *Chatham*; and it was not claimed by the defendants, that any alteration had been made in the boundaries of the town of *Middletown*, except such as were made by that incorporation. It was also admitted by the parties, that if the lines on the *North* and *South* sides of the territory described in the patent, upon a true construction of that instrument, extended across *Connecticut* river, the island in question would be within the abutments therein mentioned, and within the limits of the town of *Middletown*, as it existed prior to the incorporation of *Chatham*.

The plaintiffs claimed, that upon, a true construction of the patent, the lines upon the *North* and *South* sides of the territory therein described, extend across the river; that the patent transferred to the proprietors of the common and undivided lands in *Middletown* a good and valid title to the bed of that part of the river in which the island is situated; and that from the facts above stated, they (the plaintiffs) had acquired a good and valid title to the demanded premises, and were entitled to a verdict in their favour; and they requested the judge so to instruct the jury.

*Middlesex,*
July, 1830.
Middletown
*v.*
Sage.

The judge instructed the jury, that the land in the bed of the river never vested in the plaintiffs, by virtue of said conveyances, but remained in the colony and state of *Connecticut,* according to their true construction and legal effect; and he therefore directed the jury to find a verdict for the defendants; which they did accordingly.

The plaintiffs thereupon moved for a new trial for a misdirection.

*N. Smith* and *Hungerford,* in support of the motion, contended, 1. That the bed of *Connecticut* river between the present towns of *Middletown* and *Chatham,* is *included within the boundaries* of the ancient town of *Middletown,* as described by the patent of that town. That instrument included all the lands within these abutments, *viz. Wethersfield* on the *North, Farmington* and the commons on the *West, Haddam* on the *South,* and the wilderness on the *East,* extending on that side six miles from the river. The boundaries specified in the *Indian* deed, are the same.

2. That the *title* to the bed of the river between those towns, was *conveyed,* by the patent, to the town of *Middletown.* The term *lands* is *nomen generalissimum,* comprehending every species of ground, soil or earth whatsoever, whether upland, meadow or marsh, and in every variety of condition, whether covered with grass or stones, with wood or sand, with buildings or water. *Co. Litt.* 4. *a. Com. Dig.* tit. Grant. E. 3. 4 *Cruise's Dig.* 40, 41. *tit.* 32. *c.* 3. *s.* 33. In a grant by an individual, the term *lands* would unquestionably comprise the bed of a river. Such is in fact the present case. The original grant from the native proprietors, was a grant by individuals. The colony of *Connecticut confirmed* this grant. The construction of the original grant was thereby adopted. If it be

said, that the patent was a deed of *grant*, as well as of confirmation, this is immaterial here; for by superadding a grant, the instrument did not take away or narrow the rights which it confirmed.    But laying the *Indian* deed out of the case ; the king of *England* held the territory here not merely *jure coronæ*, but by virtue of his prerogative ; and he held the uplands and the bed of the river, by the same right.    The colony of *Connecticut*, in relation to this subject, had all the right of the king ; and the grantees under the colony are to hold in the same manner as the colony held under the king.    The reservation in the patent of gold and silver ores, shews, that without such reservation, they would have passed.

3. That if the bed of the river passed to the plaintiffs, they are entitled to the soil made upon it.

*Sherman* and *Barnes,* contra, after remarking that the demanded premises belonged, *prima facie* and of common right, to the sovereign power; (*Harg. L. T.* 17. 18. 35.) that the plaintiffs must claim either by grant or prescription ; and that they claim by grant, which excludes prescription ; contended, I. That the grant does not include the river within the boundaries specified.    The patent describes a certain tract of territory on the *West* side of *Connecticut* river, and another tract on the *East* side, which comprise the whole subject of the grant.    The *Indian* deed describes the territory as extending from the great river towards the *East*, and from the great river towards the *West.*

2. That if the river was included within the boundaries specified ; and if the words used are such as in the grant of an individual would convey both the soil and the water of a river, which could be the subject of such a grant ; yet in this public grant, which is to be construed most favourably for the public, and where no alienation can be presumed, which is not clearly and indisputably expressed, there are no words which convey the bed of this arm of the sea.    The case of *East-Haven* v. *Hemingway* & al. 7 *Conn. Rep.* 186. where the words of the grant were very similar to these, and at least as strong, is decisive of this point.    In *Palmer* v. *Hicks,* 6 *Johns. Rep.* 133. it was decided, by the supreme court of *New-York*, that a grant to a town, extending on both sides of a navigable river, does not convey the soil underneath the water, or below high-water mark.

BISSELL, J. The demanded premises consist of an island formed upon the bed of *Connecticut* river, within the last thirty years. The plaintiffs claim to recover them, on the ground that they are the owners of the soil and bed of the river, at the place where the island has arisen. It is admitted, that the river is here navigable, and an arm of the sea : and the controversy turns, entirely, upon a construction of the patent from the governor and company of the colony of *Connecticut*, to the proprietors of common and undivided lands of the town of *Middletown*, dated the 11th day of *March* 1685–6 ; as the same is explained, by a deed from sundry native *Indian* proprietors, dated the 24th day of *January* 1672. Did the title to the soil and bed of the river pass, by either, or both of these instruments ?

The patent of the governor and company of the colony of *Connecticut* conveys all the lands within the following abutments, *viz.* " on *Wethersfield* bounds, on the *North ;* on *Farmington* bounds, and the commons, on the *West ;* on *Haddam* bounds, on the *South ;* and on the wilderness, on the *East.* The breadth is from *Wethersfield* bounds, on the *North,* full four miles *South* of the meeting-house of *Middletown,* and to run the whole breadth *on the West side of Connecticut river,* five miles from the said *North* and *South* line ; *and on the East side of Connecticut river,* their bounds to run full six miles *from the said river,* the whole breadth, from *Wethersfield* bounds to *Haddam* bounds." It might admit of a serious question, whether the river is, or was intended to be, embraced within the boundaries mentioned. It is, however, unnecessary to decide that point ; for admitting it to be so embraced, still it is clear, that, upon a sound construction of the grant, no title to the soil and bed of the river, was conveyed. This instrument conveyed the land within the described boundaries, " together with all the woods, uplands, arable lands, meadows, pastures, ponds, havens, ports, waters, rivers, islands, fishings, huntings, fowlings, mines, minerals, quarries and precious stones, upon or within the said tracts of land, with all other profits and commodities thereunto belonging, or in any wise appertaining." Upon comparing the terms of this grant with that of the colony of *Connecticut* to the town of *New-Haven,* as reported in the case of *East-Haven* v. *Hemingway,* 7 *Conn. Rep.* 186. they will be found so nearly alike, as to render that case entirely decisive of the present. It would, in-

*Middlesex,*
July, 1830.

Middletown,
*v.*
Sage.

*Middlesex,*
*July, 1830.*

Middletown,
*v.*
Sage.

deed, seem impossible to make a distinction between the cases. And it can be only necessary here, to refer to the opinion of the Court in that case.

It has, however, been said, in the argument, that the patent from the governor and company of the colony of *Connecticut,* is a mere *confirmation* of the title derived from the native *Indian* proprietors; that the deed from those proprietors is now before the Court; and that this deed clearly conveys the title to the soil and bed of the river. To this argument, a satisfactory answer may be given in the language of the Chief Justice, in the case of *East-Haven* v. *Hemingway.* He says, that this patent " is not only a confirmation but a grant." " At the same time," he adds, " it must be admitted, the principal, if not the sole object of the grant, was to confirm, to the proprietors, the title to their lands, derived from the natives, which they had not the legal capacity to sell, and of which the proprietors had been in the quiet possession, for many years." 7 *Conn. Rep.* 198, 9.

But a recurrence to the grant from the native proprietors, will, I think, most satisfactorily shew, that the plaintiffs' case is far from deriving any aid from that source. The lands conveyed, thereby, are thus described: " on *Wethersfield* bounds on the *North;* on *Haddam* bounds on the *South;* and to run, *from the great river,* the whole breadth, towards the *East* six miles, and *from the great river* towards the *West,* so far as the general court of *Connecticut* hath granted the bounds of *Middlesex* to extend." Is not all title to the river expressly excluded, by the very terms of this grant? And was not such manifestly the intent of the parties? To me it seems difficult to conceive of any phraseology better adapted to express that intent. Again: The *Habendum* is in these words: " *To have and to hold,* the before mentioned tract of land, as it is bounded, with all the meadows, pastures, woods, underwood, stones, quarries, brooks, ponds, rivers, profits, commodities and appurtenances whatsoever belonging thereunto." Now, it is exceeding clear, that by none of the terms here used, was the soil of the river conveyed. See *East-Haven* v. *Hemingway,* and the cases there cited.

The island in question, being formed upon the bed of a navigable river, the title is, *prima facie,* in the state. Lord *Hale* says: " As touching islands, arising in the sea, or in the arms, or creeks, or havens thereof, the same rule holds, which is be-

fore observed, touching acquests, by the reliction, or recess of the sea, or such arms, or creeks thereof. Of common right, and *prima facie*, they belong to the crown; but where the interest of such *districtus maris*, or arm of the sea or creek, or haven, doth, in point of propriety, belong to a subject, either by charter or prescription, the islands that happen within the precincts of such private propriety of the subject, will belong to the subject, according to the limits and extent of such propriety." *De Jure Maris, pars* 1. *cap.* VI. (*Harg. L. T.* 36.) The plaintiffs having failed to show such a propriety in themselves, they cannot recover.

I would not advise a new trial.

Peters and Daggett, Js. were of the same opinion.

Hosmer, Ch. J. being an inhabitant of the town of *Middletown*, and therefore interested, and Williams, J., having been of counsel in the cause, gave no opinion.

New trial not to be granted.