New-London,
July, 1831.

CHAPMAN *against* KIMBALL and others.

Chapman
*v.*
Kimball.

The right to take sea-weed growing and accumulating on the bed of a navigable river, below low water mark, is in the public, and not exclusively in the riparian proprietor.

THIS was an action for trespass for entering upon the plaintiff's land and taking therefrom a quantity of sea-weed. The declaration described the land as bounded "*Westerly* on the river *Thames*, and running into the same to the channel of said river."

The cause was tried, on the general issue, at *New-London*, *September* term, 1830, before *Daggett*, J.

The plaintiff proved a rightful possession, as tenant for years under the heirs of *James Lewis*, deceased, of a tract of land lying on the *East* side of the river *Thames*. The deed to *Lewis* bounded him on the *West* on that river. And the plaintiff claimed, that by virtue of such deed, *Lewis* had an exclusive right to the bed of the river as far as the channel, except for navigation and fishery. He proved, that the defendants, at the time mentioned in the declaration, with their boats, went on to a place against his land, and between his land and the channel of the river, and there, below low water mark, took and carried away a quantity of sea-weed, which had there grown and accumulated. At and above this place, the *Thames* is a navigable river, in which the tide ebbs and flows. Under these circumstances, the defendants claimed, that they had good right to take such sea-weed; and prayed the judge so to instruct the jury. The judge, to the end that the question might be settled in this Court, charged the jury, that the plaintiff was entitled to recover; and a verdict was accordingly given for him. The defendants moved for a new trial for a misdirection.

*H. Strong*, in support of the motion, contended, That the right of soil of owners of land bounded by the sea or navigable rivers, extends to high water mark only; though for the purposes of commerce, they have a right of occupation, properly termed *a franchise*, of wharfing out, in such manner as not to obstruct the navigation. *Harg. Law Tracts*, passim. *Angell on Tide-waters*, 18, & seq. 125 to 164. 3 *Kent's Com.* 344. 347. 348. *Com. Dig. tit.* Navigation. A. B. *Adams* v. *Pease*, 2 *Conn. Rep.* 481. *Peck* v. *Lockwood*, 5 *Day* 22. *East-Haven* v. *Hemingway*, 7 *Conn. Rep.* 186. 202. 1 *Swift's*

Syst. 341.   Rex v. Smith, Doug. 441.   Arnold v. Mundy, 1 New-London, Halsted, 1. 18.   Palmer v. Hicks, 6 Johns. Rep. 133.   Hooker v. Cummings, 20 Johns. Rep. 100.   Ex parte Jennings, 6 Cowen 518.   Storer v. Freeman, 6 Mass. Rep. 438.   The Commonwealth v. Charlestown, 1 Pick. 180.   Ingraham & al. v. Wilkinson & al., 4 Pick. 268. 271.   This position is confirmed by the principles of law in cases of reliction.   Angell on Tide-waters, 75.   1 Swift's Syst. 342. 3.   2 Bla. Comm. 262.   1 Swift's Dig. 112.   On the same principle, an island arising in the sea, or formed on the bed of a navigable river, belongs to the public, and not to the owner of the land opposite to such island.   Angell 79.   Swift's Syst. 342.   2 Black. Comm. 262. n. 5. by Chitty.   Middletown v. Sage & al. 8 Conn. Rep. 221. 228, 9.   The right of taking sea-weed stands on the same ground as the right of fishery.

Goddard and Cleaveland, jun., contra, insisted, That the right of the plaintiff, as owner of the bank adjoining the river, extends to the channel, subject only to the rights of navigation and fishery, which belong to the public.   The right of individuals to use the soil of the shore, subject to the paramount right of the public, has never been questioned.   The plaintiff's claim is strengthened, by the consideration, that the common law will assign ownership to every thing capable of it.   2 Conn. Rep. 484, 5.   20 Johns. Rep. 101.   1 Swift's Syst. 341. 343. Emans v. Turnbull & al. 2 Johns. Rep. 313. 323.

DAGGETT, J.   As the sea-weed on the sea-shore, and on navigable rivers, has become a very considerable article of manure, conflicts, in many instances, of late, have arisen, respecting the rights of riparian proprietors and others, to gather and appropriate it.   Hence, it becomes important to settle these questions, so far as cases which occur will afford opportunities.

The Court, however, would incline to confine their decision to the case before them—to give "strict measure, not over-running."

Some incorrect notions on this subject, i. e. as to the rights of proprietors on navigable rivers, arms of the sea and the sea-coast, have been entertained in consequence of the suggestions of Judge Swift, in his System, vol. 1. p. 341.   He says, " all adjoining proprietors on navigable rivers and the ocean have a right to the soil covered with water, as far as they can occu-

New-London,
July, 1831.

Chapman
v.
Kimball.

py it, that is, to the channel, and have the exclusive privilege of wharfing and erecting on the front of their land." And again, in page 343: "Though it may be considered as a general principle, that in navigable rivers and the ocean, the right of fishery is common, yet it is under this restriction, that every proprietor is deemed to have the exclusive right of fishery in rivers and seas adjoining his land, so far as he has the right of the soil, that is, to the channel,—and that no person may take oysters or shell-fish from their beds in the front of another's land, or draw a seine for other fish within the limits above described, though he does not for that purpose enter upon the lands of the adjoining proprietor." He then cites a decision of the superior court, in the year 1790, to that effect. In his *Digest,* written nearly 30 years after, (1 *Swift's Dig.* 109.) he states the law to be, that "The ocean, navigable arms of the sea and navigable rivers, as far as high water mark, belong to the public ; and the proprietors of the adjoining land own to high water mark." He cites several decisions of the supreme court of errors, which directly over-rule the doctrine of the superior court in 1790. *Chalker* & al. v. *Dickinson* & al. 1 *Conn. Rep.* 382. *Adams* v. *Pease* & al. 2 *Conn. Rep.* 481. *Lay* v. *King* & al. 5 *Day* 72. An incidental expression, which fell from the learned judge, who gave the opinion of the court, in *Peck* v. *Lockwood,* 5 *Day* 22. may also have contributed to mislead. The doctrine of the case is unquestionably sound, that is, "the right to take shell fish on the land of an individual between high and low water mark, is a common right." In the opinion given, judge *Reeve* says, he has no doubt that the plaintiff owned the right of soil in the flats, which were adjoining to the sea and covered at high water. Hence he speaks of the *entry on the land of an individual* as being justified by the common right of fishery.

The doctrine of the common law is, that the right to the soil of the proprietors of land on navigable rivers, extends only to high water mark : all below is *publici juris*—in the king, in *England.* That is the law in *Connecticut ;* for we have no statute abrogating it. It was the law brought by our ancestors :—it is our law ;—the soil being not indeed owned by the king, but by the state.

A distinction is always maintained between rivers navigable and those not navigable.—Of the former the public alone has right ;—of the latter, individuals may, and generally do own

the same right as over other real estate. Where a river of this latter description, passes between two individuals, bounded respectively on the river, they own the soil to the centre of the river :—when bounded on a navigable river, they own the soil respectively to high water mark, and no further. *Harg. Law Tracts* 12, 13. 17. 32. Sir *Henry Constable's* case, 5 *Rep.* 107. *Ball* v. *Herbert*, 3 *Term Rep.* 253. *Com. Dig. tit.* Navigation. A. B. *The King* v. *Smith* & al. *Doug.* 441. *Angell on Tide-waters* 67.

This question was much investigated in the case of *East-Haven* v. *Hemmingway*, 7 *Conn. Rep.* 186., and the opinion of the Court, by the Chief Justice, *p.* 198, fully justifies the doctrine here laid down ; and this doctrine was still more recently recognized, at the last term of this Court, in the case of *Middletown* v. *Sage* & al. 8 *Conn. Rep.* 221. In *Kent's Comm.* and *Angell on Tide-waters, passim*, this doctrine is laid down, and treated with industry and ability.

I am well aware, that there may be an individual right to a navigable river ; but it must be acquired by grant from the king or sovereign authority, or by prescription. This shows, clearly, the principle now insisted on. *Harg. Law Tracts,* 16, 17.

The same doctrine is also established, by the principles of law, in the case of *reliction.* The general rule is, that the land which is relicted and left dry, by the receding of the water, is the property of the sovereign, as being a part and parcel of that, which was previously the domain of the sovereign ; and the *jus proprietatis* or ownership of the soil, which is covered with water, is not changed, because the water has receded from it. *Angell on Tide-waters,* 75, 76. *Harg. Law Tracts,* 14, 15. 30, 31. 1 *Swift's Syst.* 342. 2 *Bla. Com.* 262. If the increase be gradual, then the accretion belongs to the adjoining proprietor. 2 *Bla. Com.* 262. So again, in case of islands arising in the sea or navigable rivers, they belong to the king. *Angell on Tide-waters,* 79. 1 *Swift's Syst.* 342. 2 *Bla. Com.* 262. *Middletown* v. *Sage* & al. 8 *Conn. Rep.* 221.

The adjoining proprietors have the right to the shore subject to the paramount right of the public. The usage of the owners of land to high-water mark to wharf out against their own land, has never been disputed. The interests of navigation have been subserved ; and the consequenses have been altogether salutary. On the death of the owner to high wa-

*New-London,*
*July, 1831.*

*Chapman.*
*v.*
*Kimball.*

ter mark, his estate in the shore and the erections upon it, has descended to his heirs. This is our common law, founded on immemorial usage. *East-Haven* v. *Hemmingway* & al. 7 *Conn. Rep.* 186. and the cases there cited.

There is a very able opinion on the subject of the right to sea-weed collected on the shores of navigable rivers and arms of the sea, in *Emans* v. *Turnbull* & al. 2 *Johns. Rep.* 313. 323. The learned judge, in that case, considers " sea-weed thrown up by the sea, as one of those marine increases arising by slow degrees, which belongs to the owner of the soil. Its usefulness, as a manure and as a protection to the bank, will vest the property of the weed in the owner, and forms a reasonable compensation to him for the gradual encroachments of the sea to which other parts of his estate may be exposed. The *jus alluvionis* ought to receive a liberal encouragement in favour of private right." *Angell on Tide-waters,* 86. Appendix, 90.

These considerations are entitled to much respect. They do not, however, at all, apply to the case before the Court. This sea-weed, as the case states, was not collected *on the shores,* but " grew and *accumulated, below low water mark.*" In no sense, then, could the adjoining proprietor be entitled to any exclusive right to it. He might, with equal propriety, insist on an exclusive right to the weed or the fish below low water mark, because they were *against his land.* There is no principle of law for such a pretence.

A new trial ought to be granted.

The other Judges were of the same opinion.

New trial to be granted.