STATE OF CONNECTICUT *v.* EDWARD J. BRENNAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 1-10293

Argued July 26—decided November 12, 1965

*George D. Constantikes,* of Westport, for the appellant (defendant).

*Edward J. Capasse,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The accused was found guilty, after a trial to the court, of violation of the Westport hunting ordinance, which provides as follows: "No firearm shall be discharged within five hundred (500) feet of any building in the hunting district."

The prosecution of the accused was based upon a stipulation of facts and exhibits agreed upon by the state and the counsel for the accused. The facts so stipulated and the information derived from the exhibits may be stated briefly. On December 20, 1963, at approximately 4 p.m., the accused, armed with a shotgun, was hunting waterfowl in tidal waters of the Saugatuck River approximately six feet below the mean high-water mark. The location of the accused was fixed as being near the property of one Blount, at Burritt's Landing, Westport, Connecticut, approximately 280 feet from the nearest building. The accused, while in this location, had discharged the shotgun from a position from which he was hunting, and was subsequently arrested and charged with having violated the above ordinance. At the time and place stated, the accused was duly licensed by the state of Connecticut to hunt waterfowl.

By Special Act No. 254 in 1933, the General Assembly empowered the town of Westport to "prescribe, lay out, alter or extend the boundaries of a district within the limits of said town within which hunting and trapping shall be prohibited." In addition, the town was empowered to, "within the limits of said district, regulate, limit or prohibit hunting and trapping either in whole or in part." Pursuant thereto, the town of Westport enacted a hunting ordinance establishing the entire town as a hunting district and further provided that "[n]o firearm shall be discharged within five hundred (500) feet of any building in the hunting district."

In addition to the hunting ordinance, hunting and trapping is also regulated, throughout the state, by the state board of fisheries and game. This agency, pursuant to the authority vested in it under General Statutes § 26-66, has adopted rules and regulations;

included among their prohibitions is "[h]unting, discharging of firearms or carrying of loaded firearms within 500 feet of any building occupied by people or domestic animals or used for storage of flammable material, except that only waterfowl hunting in tidal water areas from land shooting positions or from floating blinds anchored adjacent to land or from rock formations may be carried on to within 250 feet of such buildings." Since the state has stipulated that the accused was approximately 280 feet distant from the nearest building, it is conceded that he did not violate any regulation of the state board of fisheries and game.

The only question before us is whether the defendant was in violation of the hunting ordinance of Westport when he discharged a firearm in hunting waterfowl in tidal waters of this state under a license duly issued by the Connecticut board of fisheries and game. It is the contention of the state that the ordinance not only is effective within the territorial, unsubmerged, limits of the town of Westport but includes, as well, the Saugatuck River, where the defendant was hunting at the time of his arrest, and extends southerly to a line between Seymour Point and Cedar Point, both in Westport and marking the extremities of the east and west shores of the Saugatuck River at its confluence with Long Island Sound. This, if true, would make the Saugatuck River, north of the southerly line between the two mentioned points, a part of the town of Westport.

The defendant maintains, in effect, that the special act, under the authority of which the town ordinance was passed, conferred no power on the town to regulate or prohibit hunting on tidal waters over which the state, as parens patriae, holds a possessory right, subject to the right of navigation, in trust for the benefit of the people of Connecticut.

The defendant claims further that under chapter 490 of the General Statutes the state had preempted the field of regulating hunting of game and that, where an ordinance is in conflict with any statute regulating and permitting the hunting of game, the statute must prevail. The prosecution does not assert or suggest that any state statute or regulation has been violated by the defendant.

In its finding of facts, the court concluded that the Saugatuck River was within the limits of the town of Westport and hence the ordinance against hunting was applicable and the defendant was guilty as charged. The motion to correct, by striking this finding as being without evidential support, was denied. This ruling is assigned as error, and in our opinion the determination of this question is dispositive of the appeal before us.

It appears conceded that the Saugatuck River is a navigable waterway in which the tide ebbs and flows. It is an estuary of Long Island Sound and an arm of the sea. *Rowe* v. *Smith,* 48 Conn. 444, 447; *Church* v. *Meeker,* 34 Conn. 421, 424; *Middletown* v. *Sage,* 8 Conn. 221, 222; *East-Haven* v. *Hemingway,* 7 Conn. 186, 198. "The state, representing the public, owns the land between the high- and low-water marks of . . . [this river], and that land and the waters of the . . . [river] are public. See *Rowe* v. *Smith,* 48 Conn. 444, 446; *Rochester* v. *Barney,* 117 Conn. 462, 468 . . . ; *State* v. *Knowles-Lombard Co.,* 122 Conn. 263, 265 . . . ." *Delinks* v. *McGowan,* 148 Conn. 614, 617. It is settled in Connecticut that the public has the right to boat, hunt and fish on the navigable waters of the state, subject only to the paramount right of navigation and to the lawfully acquired privileges or franchises of littoral or riparian owners, such as wharfing out, erecting piers and reclamation, in the exercise, principally, of the

right of access to the adjoining upland. *Delinks* v. *McGowan,* supra, 620; *McGibney* v. *Waucoma Yacht Club, Inc.,* 149 Conn. 560, 563; *Shorehaven Golf Club, Inc.* v. *Water Resources Commission,* 146 Conn. 619, 624; *State* v. *Knowles-Lombard Co.,* supra, 266; *Orange* v. *Resnick,* 94 Conn. 573, 582; *State* v. *Hooper,* 3 Conn. Cir. Ct. 143, 148. Riparian rights, nevertheless, are not immune from the exercise of the police power, as for example, through valid zoning regulations, enacted by municipal ordinance. *Poneleit* v. *Dudas,* 141 Conn. 413, 417.

A municipality, however, being a creature of the state and deriving its governmental powers from the sovereign, cannot prohibit what the state permits. There is nothing in Special Act No. 254 (1933) which confers upon the town of Westport the power to regulate or prohibit the hunting of waterfowl in the tidal waters of Saugatuck River. Under chapter 490 of the General Statutes, and more particularly under part IV thereof, the state has preempted the field of regulating and encouraging the hunting of wildlife on public and private lands and waters (§ 26-65) and has delegated to the state board of fisheries and game the duty of regulating hunting within this state. We do not go so far as to say that this duty could not be conferred by the legislature on the town of Westport within the limits of said town, as the special act expressly provides. There is nothing in this act, however, that extends the authority of the town over navigable waters adjacent to it, and insofar as the hunting ordinance of Westport attempts so to extend that authority it is in conflict with the pertinent statutes of Connecticut and must yield to them. See *Shelton* v. *City of Shelton,* 111 Conn. 433, 437-39, 447; *Bredice* v. *Norwalk,* 152 Conn. 287, 292. Although the state intimates in its argument that the town of Westport has a proprietary interest (as distinguished from a jurisdic-

tional power) in the land underlying the Saugatuck River, there is nothing in the finding or the record to prove such interest. "We must decide the issue presented on the record." *State* v. *Heyward,* 152 Conn. 426, 429. It is indisputable that in relation to jurisdiction, particularly with reference to arrests and the service of process, every navigable river in Connecticut, in whole or in part, is within some town in the state; otherwise these waters would be a sanctuary for criminals and debtors. This, however, does not confer on a town within which a navigable river or a part of it may be located a right of proprietorship in the river or the underlying soil below the mean high-water mark. See *Hayden* v. *Noyes,* 5 Conn. 391, 395, 397; *Rowe* v. *Smith,* 48 Conn. 444, 447.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion DEARINGTON and JACOBS, Js., concurred.