[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal brought by the plaintiff challenging a decision of the defendant board to uphold a cease and desist order issued by the zoning enforcement officer, Ronald E. Blake against the plaintiff ordering the plaintiff to stop operating a hunting assistance activity being carried on in the Town of Tolland on Shenipsit Lake Road. The parcel involved contains approximately fifty (50) acres and is located in a residential zone (R1).
The facts as set forth in the record are fairly well described and are undisputed. The plaintiff, Wings Over Connecticut Corp., hereinafter referred to as "Wings" is a Connecticut Corporation organized to provide hunting assistance to hunters seeking out waterfowl. The corporation leases parcels of land from farmers, places decoys on the land, constructs hunting blinds, guides hunters to the CT Page 8761 blinds, retrieves the harvested geese and distributes the geese to the owners. Wings charges one hundred dollars ($100) per day to the hunter for its services. Reservations are made in advance at another location not on the property in question and the hunters must execute liability waivers before using the property. All hunting activities conducted on the site are done in strict compliance with federal and state regulations.
On or about October 17, 1990 Ronald E. Blake, Tolland Zoning Enforcement Officer issued a cease and desist order to Wings to cease and desist the hunting assistance activities for the reason that Wings' activities on the parcel constituted a "commercial hunting enterprise which is not a permitted use in a residential Zone (R1) in Tolland."
That order was appealed to the defendant Zoning Board of Appeals which conducted a hearing on November 13, 1990 and thereafter denied the appeal resulting in this appeal to the Superior Court.
In its appeal Wings claims that the action of the defendant was illegal, arbitrary and capricious in one or more of the following respects:
 a) Contrary to the requirements set forth in Conn. Gen. Stat. Sec. 8-7 the defendant failed to state upon the record the reasons for the decision;
 b) The defendant exceeded the scope of its authority in permitting the municipal regulations of hunting, a field occupied and preempted by state statutes and regulations.
 c) By focusing on the for-profit nature of the plaintiff's business rather than on the nature of the activity being conducted on the parcel (hunting) the defendant Board erroneously determined that the plaintiff's activity constituted a nonpermitted use in a residential zone.
 d) The defendant Board exceeded the scope of its authority in upholding the order to cease and desist since the plaintiff's activity is an agricultural use, permitted as of right in an R1 residence zone.
On October 18, 1991, this Court conducted a hearing to determine the merits of the claim. The plaintiff, acting by its president, James Chartier testified that Wings is a Connecticut Corporation providing guide service for hunting CT Page 8762 geese in Tolland. He further testified that the corporation had lost several thousands of dollars because of the cease and desist order in that sums of monies had been invested in construction of the blind on the leased property which could no longer be used. Defendant's Return of Record #10 Lease Agreement establishes that a lease had been entered into by Ken Bahler (owner) and the plaintiff, for the plaintiff to rent the acreage for a period from October 1, 1990 to February 28, 1991 for the sum of One Thousand Dollars ($1000) payable prior to the commencement date. The lease further provided for a renewal from year to year unless cancelled by either party.
Based on this testimony and evidence in the record the Court finds that the plaintiff falls with the purview of the statutes and has standing to take the appeal.
The first claim of the plaintiff is that the defendant exceeded the scope of its authority in permitting the municipal regulation of hunting, a field occupied and preempted by State statutes and regulations. Section 26-65
of the Connecticut General Statutes states:
 ". . . In the interest of developing a sound wildlife program for all species of wild birds and wild quadrupeds, to encourage landowner participation in such program and to develop public hunting on public and private lands and waters, the commissioner of environmental protection is delegated authority to regulate hunting within the state as hereinafter provided."
The following section, 26-66 et seq. set forth in elaborate detail the types of regulation which can be established, the accepted standards on which the regulations may be based, wild life management practices (Sec. 26-69), regulation of fur bearing animals (Sec. 26-72), Hunting on Sunday (Sec.23-73), limits for game birds (Sec. 26-76), taking of waterfowl in open coastal waters (26-77), disposition of birds illegally taken (26-80) and finally statutory penalties for violation of the statutes and regulations (26-81).
After reviewing the above statutes there is no doubt in the Court's mind that the State has preempted the regulation of hunting. "There is attached to every ordinance, charter or resolution adopted by or affecting a municipality the implied condition that there must yield to the predominant power of the State when that power has been exercised." Dwyer v. Farrell, 193 Conn. 7, 11 citing McQuillan [Municipal Corporation (3rd Ed Rev.)] 21.32, see also State v. Brennan, CT Page 8763 3 Conn. Cir. Ct. 413 (1965).
As further evidence of the intent of the State to preempt the field of hunting regulations the Court has reviewed the Return of Record, Exhibit 14 which is a letter from the Deputy Commissioner of DEP, Dennis P. DeCarli addressed to Mr. George Guidera Town of Weston First Selectman. In that letter regarding a proposed town ordinance Mr. DeCarli states: "The Courts of the State have ruled that a municipality is a creature of the state; therefore it cannot prohibit what the state allows. The state has reserved for itself the right to regulate hunting. Recognizing this as a controlling element, local governments cannot regulate hunting within their bounds except on property that they own or control. Thus, any ordinance or rule could not be enforced if it were to be applied to a person legally hunting under state laws or regulations."
Having thus established the validity of the claim of preemption by the State, that is not to say that a municipality is powerless to control hunting within its boundaries. Hunting activities may be carried out only in zones permitted by local regulations. So although the State controls the activities of hunters the town, by their zoning regulations, controls where those activities may be carried out.
A review of the zoning regulations does not reveal hunting as a permitted use. Therefore in order to be permitted, hunting must be an accessory use to a primary use permitted in the R1 zone. Under Section 170-44 of the Tolland Zoning Regulations the following uses are permitted as of right in the R1 zone:
1. One family residence;
2. One family mobile home;
3. Customary household occupations;
4. Agriculture, forestry and forest management;
5. Amusements, fairs, bazaars: temporary non-profit organizations;
6. Governmental services;
7. Conservation;
8. Historic and monument sites; CT Page 8764
9. Library;
10. Open Space;
11. Parks and playgrounds; and
12. Accessory uses to the above uses.
It is the claim of the plaintiff that hunting could be conceivably described as an accessory use to agriculture, conservation or open space. The plaintiff further contends that where the property in question lies fallow in the fall and winter no farming activities take place making the principal use of the acreage an open space, a use permitted as of right in the R1 zone. Whether hunting can be classified as an accessory use depends on the meaning of the word "accessory". It has been defined as a use that is subordinate and customarily incidental to the main building and use on the same lot. An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. Fox v. Zoning Board of Appeals, 146 Conn. 70,74; see also Lawrence v. Zoning Board of Appeals, 158 Conn. 509,511. This Court finds that hunting is an accessory use to the open space permitted use in R1 zones in Tolland.
The final issue is whether the charging of a fee for the plaintiff's services changes the permitted use of hunting into a non-permitted commercial use.
The defendant contends that the fact that Wings operates on a profit basis changes the use of hunting into a commercial venture, one that is not permitted in an R1 zone.
The plaintiff claims that it is the use of the land that controls; not whether or not a profit is sought. The plaintiff in support of its claim, points out that there are many commercial activities carried out in R1 zones such as the raising of crops, raising and harvesting of trees and the growing and sale of livestock. "Certainly farms, hospitals and convalescent homes may be commercial enterprises, whether they are operated for profit, or are non-profit in nature, being allowable uses in residential zones." Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 58
(1988).
By focusing in on the commercial aspect of the issue the defendant has lost sight that it is the use of the land that controls. As the Court pointed out at the hearing — query whether the use would be permitted if the plaintiff had CT Page 8765 organized a club for guide hunting services, the dues being $100/per year and as part of the benefits the club member was entitled to guide services once a year? Would that activity be proper?
The Court finds that the decision of the defendant Board in upholding the enforcement order because of a claimed commercial use was arbitrary, capricious and illegal. The appeal is sustained for the reasons set forth above. Judgment may enter for the plaintiff.
HON. HARRY N. JACKAWAY SUPERIOR COURT JUDGE