## MICHAEL KALUSZKA *v.* TOWN OF EAST HARTFORD ET AL.

| Superior Court | Judicial District of Hartford | File No. CV97-0573686-S |
|---|---|---|

Memorandum filed April 22, 1999*

*Procedural History*

* Affirmed. *Kaluszka* v. *East Hartford*, 60 Conn. App. 749, 760 A.2d 1269 (2000).

*Ralph D. Sherman*, for the plaintiff.

*Janis M. Small*, for the defendants.

ROBERT J. HALE, JUDGE TRIAL REFEREE. The present action was commenced by service of process on September 2, 1997. As alleged in the complaint, the plaintiff, Michael Kaluszka, is a resident of the town of East Hartford who possesses a valid Connecticut hunting license. The defendants include the town of East Hartford, along with East Hartford Mayor Robert M. DeCrescenzo and East Hartford Chief of Police James Shay (hereinafter collectively the town). The plaintiff is seeking a declaratory judgment that § 13-33 of the code of ordinances of the town of East Hartford is invalid to the extent that it regulates hunting, as well as a permanent injunction ordering the town to refrain from enforcing the portion of § 13-33 that regulates hunting.

Section 13-33 of the code of ordinances of the town of East Hartford, entitled "Discharging Firearms and Other Dangerous Weapons," provides in pertinent part: "(a) No person shall discharge any firearm, rifle, C02 gun, air gun, BB gun, sling shot, or bow and arrows, within the Town. (b) This Section shall not apply . . . (5) In any area recommended as a hunting area by the State and approved by the Chief of Police. Such area shall be posted as required by the Chief of Police and may be closed at any time by the Chief of Police." While § 13-33 functions primarily as a prohibition against firearms, it also by its terms grants the East Hartford chief of police the power to terminate hunting in specific areas even if those areas are in compliance with the state hunting statutes.

On October 13, 1998, the plaintiff filed a motion for summary judgment. In his motion, the plaintiff claims that the town does not have the authority to regulate hunting because the state hunting laws, General Statutes § 26-3 et seq., preempt any power the town otherwise might have in the area of hunting regulation. The plaintiff argues both that the state has occupied the field of hunting regulation and, alternatively, that the town ordinance conflicts with the state hunting statutes.

On December 24, 1998, the town filed an objection to the plaintiff's motion and, in addition, a cross motion for summary judgment. The town acknowledges that hunting is regulated by the state. The town claims, however, that the state has not occupied the field of hunting regulation and, moreover, that § 13-33 does not conflict with state law.

On January 25, 1999, this court heard oral argument on the parties' motions.

The standards that the court must apply in deciding a motion for summary judgment are well established. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted;

internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24, 727 A.2d 204 (1999).

The general rule concerning state preemption of a local ordinance has been clearly stated by the Connecticut Supreme Court: "[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 232, 662 A.2d 1179 (1995). Thus, if the state has occupied the relevant field of regulation, any ordinance that operates to regulate such field is necessarily preempted; even if the state has not occupied the field, a local ordinance is still preempted if it conflicts with state statutory law. See, e.g., *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 705, 519 A.2d 49 (1986). "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 232.

The court's first task, therefore, is to determine if the state hunting statutes demonstrate the intent of the General Assembly to occupy the field of hunting regulation. If such an intent is apparent, then § 13-33 of the town ordinance would be preempted to the extent that it regulates hunting, regardless of its consistency with the state regulatory scheme. See *Helicopter Associates, Inc.* v. *Stamford*, supra, 201 Conn. 705. "[W]hether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute, and of the facts and

circumstances upon which it intended to operate." (Internal quotation marks omitted.) *Bencivenga* v. *Milford*, 183 Conn. 168, 176, 438 A.2d 1174 (1981).

The state hunting statutes appear throughout chapter 490 of the General Statutes, which covers fisheries and game. From the nature of the specific provisions throughout chapter 490, it is apparent that the legislature intended to develop a detailed scheme of wildlife management. Section 26-3, which delegates the responsibility over the development and implementation of this general scheme to the commissioner of environmental protection (commissioner), provides the commissioner with broad authority over fish and game management.

The regulation of hunting is an integral part of the state's overall wildlife management plan. See *Elliott* v. *Waterbury*, 245 Conn. 385, 416, 715 A.2d 27 (1998). General Statutes §§ 26-65 and 26-66 provide the commissioner with the authority to regulate hunting in Connecticut and, through this power, to adopt regulations that restrict hunting activities in several ways. Pursuant to this authority, the commissioner has promulgated regulations designed to protect the general public. For example, § 26-66-1 (d) of the Regulations of Connecticut State Agencies provides in relevant part: "There shall be no hunting with firearms, discharging of firearms . . . within five hundred feet of any building occupied by people or domestic animals or used for storage of flammable or combustible materials, unless written permission of owner of such buildings is obtained and carried while hunting to allow closer shooting distances . . . ." Other provisions in the General Statutes regulate hunting safety by setting penalties for hunting accidents, providing for the posting of warning signs and setting up a scheme for complaints about hunting in proximity to certain buildings, persons and animals. See General Statutes §§ 26-62, 26-66a, 26-67c and 26-71.

Of the specific provisions in the General Statutes pertaining to hunting, § 26-67c is of particular interest. The town argues that the purpose behind the passage of § 13-33 of the code of ordinances of the town of East Hartford is to ensure the safety of the public due to the dense population of the town. Shay testified by affidavit that pursuant to § 13-33, "[i]f there are *local* safety concerns, the area will not be approved for hunting," and that "[t]he interest of the town in regulating hunting is to protect the safety of citizens in [the town]." (Emphasis added.) Section 26-67c, however, establishes a procedure for dealing with local safety concerns. Under § 26-67c (a), the commissioner is required to compile a record of written complaints filed concerning the violations of the hunting regulations pertaining to hunting in proximity to persons, buildings or animals. Each year, the commissioner must then conduct a hearing to determine whether the regulations should be amended with respect to particular localities. If the commissioner finds cause to do so, he or she may then "amend such regulations for a particular locality." Subsection (b) of § 26-67c provides further that municipal officers must maintain a record of local complaints; if the officer feels that hunting in a particular area presents a "hazard to public safety," he or she may file a written report of such determination to the commissioner. It thus appears that the state has implemented a procedure for dealing with the concerns that prompted the enactment of § 13-33 of the town ordinances.

In addition to the detailed regulatory scheme set out in the General Statutes, the attitude of the legislature toward the municipal regulation of hunting is apparent from the proceedings of the General Assembly. In recent years, several bills that would have given municipalities some control over the regulation of hunting

have been proposed, but none were enacted. In 1991, the legislature considered—but did not pass—various bills that would have given local legislative bodies the power, inter alia, to restrict hunting on lots of a certain size to the use of shotguns only, to prohibit hunting within 1000 feet of a residence and to prohibit hunting on certain tracts of land purchased jointly by the state and the municipality. See 34 H.R. Proc., Pt. 19, 1991 Sess., pp. 7255–76; Conn. Joint Standing Committee Hearings, Environment, Pt. 1, 1991 Sess., pp. 2–77. In commenting on one of these provisions on the floor, Representative Dale W. Radcliffe remarked that the provision did "not seek to allow a municipality to regulate hunting at all times, in all places and under all circumstances. That is properly an activity which is left to the regulation of the department of environmental protection and the state of Connecticut." 34 H.R. Proc., supra, p. 7263. Representative Radcliffe later commented: "I'm not seeking municipal control of hunting. I don't think anyone would responsibly advocate that. Hunting activities are properly regulated by the state." 34 H.R. Proc., Pt. 28, 1991 Sess., p. 10,711. The nature of the bills considered and the comments made concerning those bills constitute evidence of the legislature's belief that municipalities have the power to regulate hunting only when and to the extent authorized by the state.

Since 1991, several other bills were proposed and rejected. In 1993, four such bills were considered. Proposed House Bill No. 5498 would have allowed municipalities, rather than the department of environmental protection, to determine by binding referendum whether to allow hunting in the municipality. Proposed House Bill No. 6791 would have enabled municipalities to restrict hunting on certain land to shotgun use only. Proposed Senate Bill No. 173 and Proposed Senate Bill No. 382 both would have granted broader power to

municipalities to determine whether and in what manner hunting would be permitted. None of these proposed bills, however, gained the approval of the joint committee on the environment. Similarly, in 1997, a public hearing was conducted before the joint committee on the environment on Raised Senate Bill No. 942, which would have allowed municipalities with a population density of greater than 1000 per square mile to pass more restrictive hunting regulations. This bill, too, failed at the committee level. The common element in each of these proposed bills is the notion that for a municipality to have the authority to restrict hunting, the General Assembly must affirmatively grant the municipality that power. So far, however, the state legislature has not done so.

Moreover, Connecticut courts that have considered whether the state has preempted the local regulation of hunting have reached the conclusion that the state has occupied the field of hunting regulation. In *State* v. *Brennan*, 3 Conn. Cir. Ct. 413, 216 A.2d 294 (1965), the Circuit Court held that the town of Westport, which was granted the power to regulate hunting within the town by special act, had no power under the special act to regulate hunting over navigable waters adjacent to the town. In so holding, the court noted: "Under chapter 490 of the General Statutes, and more particularly under part IV thereof, the state has preempted the field of regulating and encouraging the hunting of wildlife on public and private lands and waters . . . ." Id., 417.

More recently, in *Wings Over Connecticut Corp.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Tolland at Rockville, Docket No. 046338 (October 31, 1991), the court was faced with a challenge to a cease and desist order issued by the zoning enforcement officer to the plaintiff requiring the plaintiff to discontinue operating a commercial hunting enterprise in a

residential zone. The plaintiff challenged, inter alia, the town's power to restrict hunting through zoning laws, claiming that the state had occupied the field of hunting regulation. The court agreed with the plaintiff that the state had preempted the field of hunting regulation, thus prohibiting municipalities from directly regulating hunting activities. See id.

The decisions in *Brennan* and *Wings Over Connecticut Corp.* demonstrate that the state has manifested the intent to occupy the field of hunting regulation. The comprehensive nature of the state hunting statutes and regulations, when considered along with the comments and actions of the General Assembly in its consideration of provisions that would have delegated power over hunting regulation to the towns, is ample evidence of the legislature's intent. Accordingly, it is the opinion of the court that the town has no authority to regulate hunting on federal, state or private property within its borders.[1]

Even if the court were to hold, however, that the state had not occupied the field of hunting regulation, it would still be necessary to determine whether § 13-33 of the town ordinances conflicts with any of the state hunting statutes. Where the state has not occupied a particular field of regulation, municipal regulation of that field is nonetheless preempted where such regulation is inconsistent with state law. See *Bauer* v. *Waste Management of Connecticut, Inc.,* supra, 234 Conn. 232–35. "A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance

---

[1] Of course, the town, as owner, could restrict hunting on municipally owned property.

goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict." (Internal quotation marks omitted.) Id., 235.

The General Statutes—in particular § 26-67c—set forth a scheme under which specific areas may be closed pursuant to safety concerns. Under § 26-67c, if a municipality determines that a safety hazard exists in connection with a specific hunting area, a procedure is in place whereby the municipality may request that hunting be restricted or terminated in such area. The department of environmental protection, however, is given the ultimate decision-making authority as to closings for safety reasons. Section 13-33 of the code of ordinances of the town of East Hartford attempts to bypass the procedure set forth in the General Statutes. Section 13-33 frustrates the purpose and operation of the state statutes, especially § 26-67c. Accordingly, the court finds that § 13-33 of the town ordinances is in conflict with the General Statutes and is thus preempted.

It is the court's opinion that in the area of hunting regulation, the state has occupied the field. Thus, the town lacks the authority to regulate hunting, and § 13-33 of the code of ordinances of the town is invalid to the extent that it operates to regulate hunting. Furthermore, even if the court were to hold that the state has not occupied the field of hunting regulation, the hunting regulation provisions of § 13-33 are in conflict with the state statutes and are therefore preempted. Accordingly, the plaintiff's motion for summary judgment is granted and the town's motion for summary judgment is denied.