CITY OF SALINA V. JAMES BLAKSLEY.

No. 14,375.    (83 Pac. 619.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Right to Bear Arms.*    Section 4 of the bill of rights, which provides that "the people have the right to bear arms for their defense and security," is a limitation on legislative power to enact laws prohibiting the bearing of arms in the militia or any other military organization provided for by law, but is not a limitation on legislative power to enact laws prohibiting and punishing the promiscuous carrying of arms or other deadly weapons.

Appeal from Saline district court; ROLLIN R. REES, judge.    Opinion filed November 11, 1905.    Affirmed.

*R. A. Lovitt,* for appellee.
*David Ritchie,* for appellant.

The opinion of the court was delivered by

GREENE, J.:    James Blaksley was convicted in the police court of the city of Salina, a city of the second class, of carrying a revolving pistol within the city while under the influence of intoxicating liquor.    He appealed to the district court, where he was again convicted, and this proceeding is prosecuted to reverse the judgment of the latter court.    The question presented is the constitutionality of section 1003 of the General Statutes of 1901, which reads:

"The council may prohibit and punish the carrying of firearms or other deadly weapons,. concealed or otherwise, and may arrest and imprison, fine or set at work all vagrants and persons found in said city without visible means of support, or some legitimate business."

Section 4 of the bill of rights is as follows:

"The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be tolerated, and the military shall be in strict subordination to the civil power."

Salina v. Blaksley.

The contention is that this section of the bill of rights is a constitutional inhibition upon the power of the legislature to prohibit the individual from having and carrying arms, and that section 1003 of the General Statutes of 1901 is an attempt to deprive him of the right guaranteed by the bill of rights, and is, therefore, unconstitutional and void. The power of the legislature to prohibit or regulate the carrying of deadly weapons has been the subject of much dispute in the courts. The views expressed in the decisions are not uniform, and the reasonings of the different courts vary. It has, however, been generally held that the legislatures can regulate the mode of carrying deadly weapons, provided they are not such as are ordinarily used in civilized warfare.

To this view there is a notable exception in the early case of *Bliss v. Commonwealth,* 2 Littell (Ky.) 90, 13 Am. Dec. 251, where it was held, under a constitutional provision similar to ours, that the act of the legislature prohibiting the carrying of concealed deadly weapons was void; that the right of the citizen to own and carry arms was protected by the constitution and could not be taken away or regulated. While this decision has frequently been referred to by the courts of other states, it has never been followed. The same principle was announced in *In re Brickey,* 8 Idaho, 597, 70 Pac. 609, 101 Am. St. Rep. 215, but no reference was made to *Bliss v. Commonwealth* nor to any other authority in support of the decision.

In view of the disagreements in the reasonings of the different courts by which they reached conflicting conclusions, we prefer to treat the question as an original one. The provision in section 4 of the bill of rights that "the people have the right to bear arms for their defense and security" refers to the people as a collective body. It was the safety and security of society that were being considered when this provision was put into our constitution. It is followed immediately by the declaration that standing armies in time

of peace are dangerous to liberty and should not be tolerated, and that "the military shall be in strict subordination to the civil power." It deals exclusively with the military; individual rights are not considered in this section. The manner in which the people shall exercise this right of bearing arms for the defense and security of the people is found in article 8 of the constitution, which authorizes the organizing, equipping and disciplining of the militia, which shall be composed of "all able-bodied male citizens between the ages of twenty-one and forty-five years." The militia is essentially the people's army, and their defense and security in time of peace. There are no other provisions made for the military protection and security of the people in time of peace. In the absence of constitutional or legislative authority no person has the right to assume such duty.

In some of the states where it has been held, under similar provisions, that the citizen has the right preserved by the constitution to carry such arms as are ordinarily used in civilized warfare, it is placed on the ground that it was intended that the people would thereby become accustomed to handling and using such arms, so that in case of an emergency they would be more or less prepared for the duties of a soldier. The weakness of this argument lies in the fact that in nearly every state in the Union there are provisions for organizing and drilling state militia in sufficient numbers to meet any such emergency.

That the provision in question applies only to the right to bear arms as a member of the state militia, or some other military organization provided for by law, is also apparent from the second amendment to the federal constitution, which says: "A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." Here also the right of the people to keep and bear arms for their security is preserved, and the manner of bearing them for such pur-

pose is clearly indicated to be as a member of a well-regulated militia, or some other military organization provided for by law.

Mr. Bishop, in section 793 of the third edition of his work on Statutory Crimes, treating of this provision, which is found in almost every state constitution, says: "In reason, the keeping and bearing of arms has reference only to war, and possibly also to insurrections wherein the forms of war are as far as practicable observed."

The case of *Commonwealth v. Murphy,* 166 Mass. 171, 44 N. E. 138, 32 L. R. A. 606, strongly supports the position we have taken. In that case the defendant was convicted of being a member of an independent organization that was drilling and parading with guns. The guns, however, had been intentionally made so defective as to be incapable of being discharged. The prosecution was had under a statute which provided:

"No body of men whatsoever, other than the regularly organized corps of the militia [and certain other designated organizations], shall associate themselves together at any time as a company or organization, for drill or parade with firearms, or maintain an armory in any city or town of this commonwealth."

On the trial the defendant invoked the provision of the Massachusetts bill of rights that "the people have a right to keep and bear arms for the common defense" in support of his contention that he had the right to bear arms. The court said:

"This view cannot be supported. The right to keep and bear arms for the common defense does not include the right to associate together as a military organization, or to drill and parade with arms in cities or towns, unless authorized so to do by law. This is a matter affecting the public security, quiet, and good order, and it is within the police powers of the legislature to regulate the bearing of arms so as to forbid such unauthorized drills and parades."

The defendant was not a member of an organized

militia, nor of any other military organization provided for by law, and was therefore not within the provision of the bill of rights and was not protected by its terms. The judgment is affirmed.

All the Justices concurring.