No. 47,580

CITY OF JUNCTION CITY, *Appellant,* v. VERNON LEE, *Appellee.*

(532 P. 2d 1292)

496

Opinion filed March 1, 1975.

*William D. Clement,* of Junction City, argued the cause and was on the brief for the appellant.

*Roger D. Thompson,* of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Vernon Lee was convicted in municipal court for violation of an ordinance of the city of Junction City prohibiting certain use of handguns and knives. Upon his appeal to the district court the proceeding was there dismissed for the reason the municipal ordinance conflicted with state statutes and further that the state had preempted the field of weapons control. The city has appealed.

The factual background of the matter is that on January 26, 1974, at 11:20 p. m. while checking a used car lot in Junction City two police officers observed defendant and another person duck behind a car on the last row of cars on the lot. The rear of the lot was not well lighted. Approaching the position where defendant was last seen, the officers discovered him and saw he had on him a hip style holster containing a .36 caliber ball and cap loaded revolver and a scabbard attached to his belt containing a knife with a blade nine and one half inches in length. Defendant was carrying a star type lug wrench in his hand. Neither defendant nor his companion was in any way associated with the used car lot and the lot was not open for business at the time. Defendant was arrested and charged with carrying deadly weapons (the knife and pistol) contrary to city or-

dinance. At the trial in municipal court defendant testified he had just been out "plinking" around but that he had told the officers he and his companion had been rabbit hunting because at the time he believed that explanation was more appropriate; he further explained he and his companion ducked down when they saw the unmarked police car enter the premises because some associates of his companion had earlier threatened him. Defendant was found guilty in municipal court and sentenced to ninety days confinement.

In district court defendant filed a motion to dismiss the action on five grounds. The first two grounds were not ruled upon by the trial court, they are not here asserted by defendant in support of the trial court's order and they need not be further considered. The other three grounds in the motion were that the ordinance violates the federal and state constitutional rights to bear arms, it violates the home rule amendment to the state constitution and the state has preempted the field of weapons control.

The trial court announced its ruling orally. After stating some kind of inherent right to bear arms and a legislative limitation thereon, the court said:

"Has the city statute further enjoined the use of firearms over and above what the state has done? My answer has to be yes, in abolishing any guilty mind and, second, in abolishing the distinction between a concealed weapon and an unconcealed weapon. For that reason, the Court is going to find that the ordinance—that the state has pre-empted the law on weapons control and that the city ordinance is in contravention of the meaning of the state statute and therefore must fail."

The first point on appeal may be quickly disposed of. Defendant urges in support of the trial court's ruling that the ordinance conflicts with the Kansas constitutional right to bear arms (§ 4, BR). He acknowledges now that the federal constitution does not guarantee the absolute right of an individual to carry a gun (*United States v. Miller*, 307 U. S. 174, 83 L. ed 1206, 59 S. Ct. 816; *Eckert v. City of Philadelphia, Pa.*, 477 F. 2d 610) but argues our state constitutional guaranty is worded sufficiently different from the federal that that right should be afforded under it. We have long since laid the matter to rest. In *Salina v. Blaksley*, 72 Kan. 230, 83 Pac. 619, it was stated:

"The provision in section 4 of the bill of rights that 'the people have the right to bear arms for their defense and security' refers to the people as a collective body". (p. 231.)

The court further held that the constitution guaranty is "a limitation on legislative power to enact laws prohibiting the bearing of arms

in the militia or any other military organization provided for by law, but is not a limitation on legislative power to enact laws prohibiting and punishing the promiscuous carrying of arms or other deadly weapons". (Syl.) The foregoing principles were cited approvingly in *State v. Bolin*, 200 Kan. 369, 436 P. 2d 978. We adhere to them. (The interested reader may find in *Moore v. Shanahan*, 207 Kan. 645, 663, 486 P. 2d 506, discussion of the manner in which the people, as members of the militia, exercise the right to bear arms.) As will be seen later in looking at the ordinance, it does not obstruct the right of the militia or other military organizations to bear arms for the safety and security of society. Specifically exempted from its operation are members of the armed forces, reserves and national guard in the performance of their duties.

Defendant's contention in its motion to dismiss, reasserted here, that the ordinance violates the home rule amendment is premised on the assertions the ordinance conflicts with statutory law and that the latter has preempted the area in which the city has sought to operate.

In *Claflin v. Walsh*, 212 Kan. 1, 509 P. 2d 1130, we held that by virtue of the home rule provision of the Kansas constitution, article 12, section 5, cities are not dependent upon the state legislature for their authority to determine their local affairs and government; they have power granted directly from the people through the constitution without statutory authorization; the home rule power of cities is subject to optional control by legislative action in certain areas; section 5 (*d*) of the article requires a liberal construction of the powers and authority granted cities for the purpose of giving cities the largest measure of self-government; and finally, that home rule power of cities is favored and should be upheld unless there is sound reason to deny it. (Syl. ¶¶ 1, 2, 3 & 4.)

The significant part of the home rule amendment for present purposes is:

"Cities are hereby empowered to determine their local affairs and government . . . by ordinance passed by the governing body . . . subject only to enactments of the legislature . . . applicable uniformly to all cities. . . ." (Art. 12, § 5 [*b*].)

The amendment became effective July 1, 1961. Its big impact is that legislative silence on a subject no longer means absence of a city's authority to act in that area. No longer must Kansas cities rely on enabling statutes by the legislature in order to act by ordinance in matters of local concern.

Weapons control is an area of cities' concern. That it is of con-

current state concern is no impediment to the exercise of authority by a city through ordinance so long as there is no conflict in terms with state legislation and the state legislature has not preempted the field. Answers to these latter questions determine whether an ordinance is "subject to" state legislation within the meaning of the home rule amendment.

To determine these issues we should look at the ordinance in question and the action of the legislature in the same area. Omitting formal parts ordinance No. G-360, an ordinary one enacted in 1973, provides:

"12-410. (1) Unlawful use of weapons is knowingly:

(a) Selling, manufacturing, purchasing, or possessing any bludgeon, sandclub, shotgun with a barrel less than eighteen (18) inches in length, metal knuckles or any knife; commonly referred to as a switchblade, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or any knife having a blade that opens or falls or is ejected into position by the force of gravity or by an outward, downward, or centrifugal thrust or movement; or

"(b) Carrying on one's person, or in any land, water or air vehicle, a dagger, dirk, billy, blackjack, sling shot, dangerous knife, straight-edge razor, stilletto or any other dangerous or deadly weapon or instrument of like character: Provided, An ordinary pocket knife with no blade more than four (4) inches in length shall not be construed to be a dangerous knife, or a dangerous or deadly weapon or instrument; or

"(c) Carrying on one's person or in any land, water or air vehicle, with intent to use the same unlawfully, a tear gas or smoke bomb or projector or any object containing a noxious liquid, gas or substance; or

"(d) Carrying any pistol, revolver or other firearm on the person or in any land, water or air vehicle except when on his land or in his abode, fixed place of business or office; or

"(e) Setting a spring gun; or

"(f) Possessing any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm; or

"(g) Selling, manufacturing, purchasing, or possessing any firearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger.

"(2) Exemptions. (a) Subsections (1) (a), (b), (c), (d), and (g) of this section shall not apply to or affect any of the following: (i) Law enforcement officers, or any person summoned by any such officers to assist in making arrests or preserving the peace while actually engaged in assisting such officer; (ii) Wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; (iii) Members of the armed services or reserve forces of the United States or the Kansas national guard while in the performance of their official duty; (iv) Manufacture of, transportation to, or sale of weapons to persons authorized under (i) through (iii) of this subsection to possess such weapons.

"(b) Subsection (1) (b) and (d) of this section shall not apply to or

affect the following: (*i*) Watchmen while actually engaged in the performance of the duties of their employment; or (*ii*) Licensed hunters or fishermen while engaged in hunting or fishing and traveling in places to hunt and fish; or (*iii*) Persons licensed as private detectives by the state of Kansas, detectives or special agents regularly employed by railroad companies or other corporations to perform full-time security or investigative service.

"(*c*) Subsection (1) (*b*) shall not apply to a barber or licensed doctor making house calls for the purpose of practicing their trade or profession.

"(*d*) Subsection (1) (*d*) shall not apply to persons carrying unloaded weapons directly from or to places where said weapons are to be or have been repaired or sold by a gunsmith or dealer.

"(3) It shall be a defense that the defendant is within an exemption.

"12-411. Any person unlawfully using weapons as defined in 12-410 shall upon conviction thereof, be deemed guilty of a misdemeanor and shall be punished as provided under the general penalty section of these ordinances."

We are here concerned only with section (1) (*b*) denouncing the carrying on one's person a dangerous knife and section (1) (*d*) prohibiting carrying any revolver on the person, along with the exemptions in section (2) and the defense prescribed in section (3).

K. S. A. 21-4201 provides:

"(1) Unlawful use of weapons is knowingly:

"(*a*) [Same as city ordinance (1) (*a*)]

"(*b*) Carrying concealed on one's person, or possessing with intent to use the same unlawfully against another, a dagger, dirk, billy, blackjack, slung shot, dangerous knife, straight-edged razor, stiletto or any other dangerous or deadly weapon or instrument of like character: *Provided,* An ordinary pocket knife with no blade more than four (4) inches in length shall not be construed to be a dangerous knife, or a dangerous or deadly weapon or instrument; or

"(*c*) [Same as city ordinance (1) (*c*).]

"(*d*) Carrying any pistol, revolver or other firearm concealed on the person except when on his land or in his abode or fixed place of business; or

"(*e*) [Same as city ordinance (1) (*e*).]

"(*f*) [Same as city ordinance (1) (*f*).]

"(*g*) [Same as city ordinance (1) (*g*).]

"(2) Exemptions (*a*) and (*b*) [same as city ordinance (2) (*a*) and (*b*).]

"(3) [Same as city ordinance (3).]

"(4) Violation of subsections (1) (*a*) through (1) (*f*) of this section is a class B misdemeanor; violation of subsection (1) (*g*) of this section is a class E felony."

The essential difference between the ordinance and the state statute, pertinent here, is that the ordinance denounces carrying on one's person a dangerous knife or firearm (with exceptions not here material) while the statute makes such carrying criminal only where the weapons are concealed or, disjunctively, in the case of a dangerous knife, carried with intent to use the same unlawfully

against another. The ordinance eliminates these latter elements and is thus more restrictive, more stringent. Does this constitute a conflict? We think not.

A test frequently used to determine whether conflict in terms exists is whether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes; if so, there is conflict, but where both an ordinance and the statute are prohibitory and the only difference is that the ordinance goes further in its prohibition but not counter to the prohibition in the statute, and the city does not attempt to authorize by the ordinance that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict (see 56 Am. Jur. 2d, Municipal Corporations, Etc., § 374, p. 408-409). This court has applied the foregoing principles. In *City of Beloit v. Lamborn,* 182 Kan. 288, 321 P. 2d 177, it was held the mere fact that an ordinance provides for greater restrictions does not necessarily make it inconsistent or in conflict with the statute. Like cases of pre-home rule vintage could be cited.

In *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P. 2d 183, the issue was the validity of an ordinance requiring private clubs to close at 1:30 a. m. A statute provided that no club licensed under state law could serve alcoholic beverages after 3:00 a. m. The club owners contended the ordinance was contrary to and conflicted with the statute. This court held no conflict existed and said:

"Where a municipal ordinance merely enlarges on the provisions of a statute by requiring more than is required by the statute, there is no conflict between the two unless the legislature has limited the requirements for all cases to its own prescription." (Syl. ¶ 3.)

The governing bodies of some cities may conclude they are sufficiently protected by the state statutes on weapons control but that is their business. Evaluation of the wisdom or necessity of the Junction City enactment of a weapons control ordinance more rigid than statutory law is not within our province, although the city fathers undoubtedly were aware of the fact that in situations where passions or tempers suddenly flare easy accessibility of weapons, whether carried openly or concealed, may contribute to an increased number of fatalities, and further that their own problem is rendered more acute by the presence of an adjoining military reservation from whence combat troops trained in the use of handguns and knives sometimes repair to the city during off-duty hours. In an

earlier era the cowboy entering the Kansas cowtown was frequently required to deposit his gunbelt with the marshal. We conclude conflict in terms or language between the parts of the ordinance and the state statute does not exist.

The trial court further found that the ordinance was void because state statutes have preempted the field of weapons control. This, of course, is another form of "conflict" and where it exists an ordinance is not "subject to" state legislation within the meaning of the home rule amendment. Here again we have prior as well as post-home rule precedent on the point at issue. In *City of Garden City v. Miller*, 181 Kan. 360, 311 P. 2d 306, this court pointed out that the fact the state has enacted legislation on a subject does not necessarily deprive a city of the power to deal with the same subject. In *City of Beloit v. Lamborn*, supra, it was further held that legislative intent to reserve to the state exclusive jurisdiction to regulate must be clearly manifested by statute before it can be held that the state has withdrawn from the cities power to regulate in a particular area. In *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P. 2d 524, the court was concerned with whether a city ordinance encroached upon an area exclusively reserved for state action. The ordinance fixed the hours of operation of clubs licensed by the state under the state private club act. In denying that state preemption existed this court said:

". . . it is significant that when the legislature adopted [the private club act] and forbade therein the enactment of any ordinance conflicting with the act, it did not include a preemptive provision. We cannot view the omission as unintentional. The legislature was perfectly aware of the method by which it could have vested exclusive control and regulation of liquor consumption in the state had it so intended, as is evidenced by its inclusion of the preemptive provision contained in [the Kansas liquor control act]." (p. 735.)

In *Hutchinson Human Relations Comm. v. Midland Credit Management, Inc.*, 213 Kan. 308, 517 P. 2d 158, we iterated the point thus:

"An intent on the part of the legislature to retain exclusive jurisdiction to legislate in a given area must be clearly shown, and where such an intent cannot be gathered from the statutes themselves, whatever extrinsic evidence there may be of such an intention must be clear and convincing before the power to regulate can be said to have been withdrawn from cities." (Syl. ¶ 6.)

We find nothing in our state weapons control act which would indicate it was intended to occupy the field exclusively and we know of nothing extrinsically pointing in that direction. Defendant

asserts that the legislature has enacted a *comprehensive* weapons control scheme, thereby evincing an intent to preempt that field. He lifts that adjectival term from the following judicial council comment quoted immediately after K. S. A. 21-4202:

"These sections are the first sections of a comprehensive weapons control act. . . ."

Legislative intent to preempt is not to be so simplistically found. Our state weapons control law is concerned with the protection of human life and well-being. Absent clear expression to that effect, we cannot conceive that the legislature intended by its enactment, comprehensive though it be, to exclude cities' traditional resources from that endeavor. The subject of weapons control is such that an exclusive state policy is not necessarily required; at any time the legislature deems otherwise it still retains optional control of cities' actions under the home rule amendment and can so declare by enacting "conflicting" law. It can undo that which a city has done. Nor do we see how parts of the ordinance under consideration in any way interfere with the purpose of the state weapons control act. The further argument that by the enactment of our present criminal code the legislature has preempted for the state the entire field of criminal law was implicitly rejected in *City of Lyons v. Suttle*, 209 Kan. 735, 498 P. 2d 9 (see dissenting opinion 209 Kan. 742-743, 498 P. 2d 15). The statute relied upon for the theory of preemption is K. S. A. 21-3102, which states:

"(1) No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state. . . ."

The foregoing is simply codification of prior case law holding there are no common law crimes in Kansas—all crimes are statutory (see *State v. Koontz*, 124 Kan. 216, 218, 257 Pac. 944). Further negativing the notion our present criminal code was intended to preempt cities from that field are the several references to municipal courts in it and in our code of criminal procedure. For example, K. S. A. 21-3108 (3), our former jeopardy statute, bars state prosecution under certain conditions if the defendant was prosecuted "in the municipal or police court of any city of this state for a crime which is within the concurrent jurisdiction of this state. . . ." See also in our recently enacted municipal practice act provision for prosecution of non-traffic offenses (K. S. A. 1974 Supp. 12-4205).

In urging need for statewide uniformity of criminal laws defendant points out that the traveler passing through Junction City

could be arrested and prosecuted for having a gun in his car. Perhaps, if he did not fall within the exemptions as for hunters, etc., but in any event we are not here concerned with that part of the ordinance. This is not a declaratory judgment action for the entire ordinance. If it were, section (1) (g) dealing with fully automatic firearms could well be found to conflict with the state law because K. S. A. 21-4201 (4) declares such offense to be a felony. This portion of the ordinance is severable so that its vulnerability would have no effect upon the validity of the parts of the ordinance at issue here. Our conclusion is that state legislation has not occupied the area of weapons control to the exclusion of regulation by cities.

The judgment is reversed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: In a far-reaching precedent the court by its decision is extending the Home Rule power of a city to legislate in the field of criminal law.

The court in *City of Lyons v. Suttle*, 209 Kan. 735, 498 P. 2d 9, premised its decision upholding an ordinance of the City of Lyons upon the ground that its enactment was a proper exercise of the *police power* by the city governing body. The subject matter was treated under the police power on the theory that "Beverages with some alcoholic content have long been considered of such a nature and effect that laws regulating *sales and consumption* have been passed and enforced." (Emphasis added.)

In the case presently before the court the Home Rule Amendment to the Constitution of Kansas is asserted to authorize cities to venture into the field of criminal law. But powers granted to cities by the Home Rule Amendment to the Kansas Constitution (Article 12, Section 5) preclude municipalities from entering a field of legislation which has been occupied by general legislative enactment of statewide concern applicable uniformly to all cities. (Article 12, Section 5 [b], Kansas Constitution; *Capitol Cable, Inc. v. City of Topeka*, 209 Kan. 152, 159, 495 P. 2d 885; and see *City of Baytown v. Angel*, 469 S. W. 2d 923 [Tex. Civ. App. 1971].)

My dissent is premised upon the theory that the subject matter of the ordinance has been *pre-empted* by the state and the ordinance is also in *conflict* with state law.

Pre-emption by the state in the field of criminal law is indicated

by the intention of the legislature in several ways. K. S. A. 21-3102 (1) provides in part:

"No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state. . . ."

The foregoing is an emphatic declaration by the legislature that the field of criminal law has been pre-empted by the state.

Further indication that the subject matter of the ordinance in question has been pre-empted by the Kansas Criminal Code is found in the fact that the legislature submitted the drafting of the Kansas Criminal Code to the Kansas Judicial Council. Pursuant thereto the Kansas Judicial Council drafted the code and supplied comments to the various sections upon recommending passage of the code to the legislature. Article 42 (K. S. A. 21-4201 to 21-4206 inclusive) is headed "CRIMES AGAINST THE PUBLIC SAFETY" with a subhead "WEAPONS CONTROL". The Judicial Council comment following section 21-4202 states: "These sections are the first sections of a *comprehensive weapons control act* and should be read with sections 21-4203 through 21-4206." (Emphasis added.)

Some states have held that the penal system adopted by a state constitutes a complete legislative scheme intended to occupy the field. (*Abbott v. City of Los Angeles,* 53 C. 2d 674, 3 Cal. Rptr. 158, 349 P. 2d 974; *Kim v. Town of Orangetown,* 66 Misc. 2d 364, 321 N. Y. S. 2d 724; and *City of Baytown v. Angel,* supra.) Other jurisdictions have said that a municipality being a creature of the state and deriving its governmental powers from the state, cannot prohibit what the state permits. (*State v. Brennan,* 3 Conn. Cir. 413, 216 A. 2d 294.)

The rule denying power to a local body when the state has pre-empted the field is a rule of necessity, based upon the need to prevent dual regulations which could result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only upon the language of the statutes adopted, but upon the purpose and scope of the legislative scheme. (*Abbott v. City of Los Angeles,* supra.)

The primary method of determining whether an ordinance is inconsistent with the penal law of the state is to see *whether the local law prohibits anything which the state law permits.* Where an act permissible under the state law becomes a violation of the local law, the local law is unauthorized. (*Kim v. Town of Orangetown,* supra, and the many authorities cited therein.)

A careful comparison of ordinance No. G-360 of the City of

Junction City and K. S. A. 21-4201 [Weeks], set forth in the court's opinion, will disclose that the City of Junction City was copying verbatim the provisions of the State Criminal Code with a few exceptions. Where the state code denounces the carrying of *concealed weapons* on one's person, the ordinance deletes the word "concealed" and denounces the carrying of weapons on one's person, or in any land, water or air vehicle. Section 1 (g) in the ordinance, dealing with fully automatic firearms, is made a *misdemeanor* by section 12-411 of the ordinance. This is in conflict with the state law because K. S. A. 21-4201 (4) [Weeks] declares such an offense to be a *felony*.

It is readily apparent the ordinance in question prohibits acts which are permitted by the State Law of Kansas. Thus, the ordinance is in conflict with the penal law of the state.

The authority of a municipality to abrogate state law can never be implied or inferred. It is only derived from express grant, never from a general grant of power. (*City of Garden City v. Miller*, 181 Kan. 360, 311 P. 2d 306.) In my opinion the Home Rule Amendment is tortured to permit the City of Junction City to enact the ordinance here in question.

The authorities cited and discussed in my dissenting opinion in *City of Lyons v. Suttle*, supra, beginning at page 742 of the official report, are reasserted and incorporated herein by reference.

It is respectfully submitted a municipal ordinance cannot permit an act which the state penal system forbids, or forbid an act which the state penal system permits. Under Kansas decisions the test of concurrent legislative and municipal authority is the absence of conflict with the legislative will.

It is respectfully submitted the decision of the lower court declaring the ordinance in question void should be affirmed.