Toni Ramirez Wheeler Interim Director of Legal Services City of Lawrence 6 East 6th, Box 708 Lawrence, Kansas 66044
Dear Ms. Wheeler:
On behalf of the governing body of the City of Lawrence, you inquire whether a proposed ordinance establishing a domestic partnership registry "is lawful in Kansas." Because it is impossible to address all of the potential legal challenges to any ordinance, and in the absence of a more specific query, our focus will be limited to whether this proposed ordinance is within the City's constitutional home rule authority and, in that context, whether it runs afoul of the recent amendment to the Kansas Constitution regarding marriage and non-marital relationships.[1]
I. The Proposed Ordinance
Proposed Ordinance No. B creates a domestic partnership registry allowing "domestic partners" to register with the City of Lawrence. The salient provisions include the following:
 1. "Domestic partners" are defined as unmarried individuals who are at least 18 years old, have the mental capacity to contract, and "who live together in a relationship of indefinite duration, with a mutual commitment in which the partners share the necessities of life and are financially interdependent."[2] Domestic partners cannot have another domestic partner and cannot be related by blood, such that any marriage would be void.[3]
 2. Residency in the City of Lawrence is not a requirement to register. A registration fee is charged.
 3. Once registered, a domestic partnership can be removed from the registry in accordance with the ordinance and procedures developed by the City Manager.[4]
 4. The registration "creates no legal rights, other than the right to have the registered domestic partnership included in the City's Domestic Partner Registry. . . ."[5]
 5. The ordinance is not to be "interpreted [or] construed to permit the recognition of a relationship that is otherwise prohibited by State law."[6]
A review of the testimony and discussion at the City Commission meeting on January 9, 2007 reveals that the impetus for this proposed ordinance is to facilitate private employers' extension of insurance and other employment benefits to domestic partners of employees. The testimony presented to the City Commission indicates that this willingness on the part of some employers is extended only if the partnership is documented by a state or local governmental entity.[7] Additionally, testimony offered by proponents evinces no desire to extend or mandate benefits as a consequence of the registry but simply to "provide . . . recognition . . . that Lawrence welcomes and embraces its alternative families."[8]
You indicate that numerous cities throughout the United States provide such registries with some cities requiring residency and others not.[9] The City's proposed ordinance is modeled after an ordinance enacted by the City of Cleveland Heights, Ohio[10] that was upheld by a state appeals courts after being challenged as outside the purview of Ohio's Home Rule Amendment.[11]
II. The Kansas Home Rule Amendment
With this background in mind, we now examine whether proposed Ordinance No. B falls within the City's home rule powers. The Home Rule Amendment[12] provides, in part:
 "(b) Cities are hereby empowered to determine their local affairs and government. . . . [Cities] shall exercise such determination by ordinance passed by the governing body . . . subject only to . . . enactments of the legislature applicable uniformly to all cities. . . .
 . . . .
 "(d) Powers and authorities granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government."
Proposed Ordinance No. B is an "ordinary ordinance" for purposes of Home Rule analysis, as opposed to a "charter ordinance" that "opts out" of a nonuniform enactment.[13] Charter ordinances are governed by a different provision of the Home Rule Amendment[14] than the provision at issue here.
In Kansas City Renaissance Festival Corp. v. City of BonnerSprings,[15] the Kansas Supreme Court considered the parameters of the Home Rule Amendment in the context of an ordinary ordinance imposing an amusement admission tax:
 "In 1961, the home rule amendment to the Kansas Constitution took effect and empowered cities to determine their local affairs. The legislature retains power over statewide matters. Hence, home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment. Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Kan. Const. art. 12, § 5(c). Where there is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice."[16]
In analyzing ordinary ordinances, the Kansas appellate courts apply the following standards:
 "A city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action."[17]
 "A test frequently used to determine whether conflict . . . exists is whether the ordinance permits . . . that which the statute forbids or prohibits that which the statute authorizes. . . ."[18]
 "[In] cases involving the legality of an ordinance under home rule authority, `the ordinance is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt.'"[19]
III. Conflict and Preemption
Applying this analysis to proposed Ordinance No. B, we must decide: (1) whether the ordinance conflicts with a statute; and (2) whether the Legislature has preempted the ordinance by passage of an enactment that applies uniformly to all cities.[20]
There are no statutes addressing domestic partnership registries.[21] While there are uniform statutes governing the establishment and dissolution of the marital relationship,[22]
proposed Ordinance No. B does not address marital relationships.
In the absence of statutes in this area, we consider the recent amendment to the Kansas Constitution, Article 15, § 16, (hereinafter referred to as the Marriage Amendment) which provides, as follows:
 "(a) The marriage contract is to be considered in law as a civil contract. Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void.
 "(b) No relationship, other than a marriage, shall be recognized by the state as entitling the parties to the rights or incidents of marriage."[23]
While we could find no Kansas appellate court decisions addressing whether, for home rule purposes, the same conflict and preemption analysis applied to statutes also applies to provisions of the Kansas Constitution, we will assume, without deciding, that the same analysis applies.[24]
A. The Marriage Amendment/Conflict Analysis
In determining whether the Marriage Amendment conflicts with proposed Ordinance No. B or preempts the City of Lawrence from establishing a domestic partnership registry, we must interpret the Amendment in the context of this proposed ordinance. Towards that end, it is helpful to understand the Amendment's provenance.[25]
The impetus for a constitutional amendment codifying the traditional concept of marriage as between a man and a woman arose as a result of appellate court decisions from other jurisdictions that concluded that same-sex partners are entitled to the same legal rights and protections as married couples.[26]
Subsection (a) of the Marriage Amendment mirrors current Kansas law acknowledging marriage as a union between only one man and one woman.[27] The meaning of subsection (b) was the subject of debate during the 2004 and 2005 Kansas legislative sessions.
2004 House Concurrent Resolution No. 5033 (HCR 5033) initially contained only subsection (a), defining marriage as a civil contract between a man and a woman. The House Committee on Federal State Affairs amended HCR 5033 to include a prototype for the current subsection (b):
 "No relationship other than a marriage between one man and one woman shall be recognized by the state as being entitled to the benefits of marriage."[28]
The House Committee of the Whole further amended the provision to provide:
 "No relationship other than a marriage between one man and one woman shall be recognized by the state as being entitled to the benefits rights, benefits, privileges and incidents of marriage."
 Despite the Senate Committee of the Whole's deletion of thisprovision, it failed to adopt the amended resolution which doomed HCR5033.[29]
 HCR 5033 was resurrected in the 2005 legislative session as SenateConcurrent Resolution 1601(SCR 1601). SCR 1601 was similar to HCR 5033,except that subsection (b) was modified to read as it currently existstoday:
 "No relationship, other than a marriage, between one man and one woman shall be recognized by the state as being entitled to the rights, benefits, privileges and entitling the parties to the rights or incidents of marriage."
SCR 1601 passed the Senate with a two-thirds majority. Explaining hisaffirmative vote, Senator Tim Huelskamp stated that "the purpose andintent of SCR 1601 is to protect and reserve the special status of theinstitution of marriage in Kansas."[30]
 When SCR 1601 reached the House, there was an unsuccessful attempt todelete subsection (b).[31] The measure passed the following day withthe required two-thirds majority in spite of the concerns of somemembers regarding its meaning.[32]
 In crafting subsection (b), the Revisor of Statutes presented verbiagefrom other states that precludes unmarried couples from being accordedthe statutory and common law benefits that generally flow from themarital relationship. However, while subsection (b)'s verbiage embracesthis concept, it does not mirror any other state'sprovisions.[33]
 A proponent of SCR 1601, Representative Jan Pauls testified thatsubsection (b) would prohibit the State from: (1) providing maritalbenefits for non-marital relationships; and (2) from compelling othersto treat non-marital relationships as the equivalent ofmarriage.[34] Thus, as she explained, no employer could be forced tooffer insurance benefits to non-marital couples, but private employerscould voluntarily offer such benefits.[35] She assured legislatorsthat SCR 1601 "would not remove any rights that any Kansas citizenpresently holds."[36]
 Professor Kris Kobach, a constitutional law professor at theUniversity of Missouri-Kansas City, testified regarding the meaning ofsubsection (b):
 "SCR 1601 only applies to rights and incidents of marriage conveyed by `the state.' It does not limit contractual or legal arrangements between private parties. In other words, private contracts that offer benefits similar to those offered to married couples are in no way prohibited by SCR 1601. For example, an employer could offer health benefits to gay partners of employees without contravening SCR 1601 in any respect. When such a private contract is made, it does not constitute `recognition by the state.' The state has not acted in any way. [A] right or incident of marriage is something that is automatically triggered when a marriage exists. It is something that has been positively identified by statute or court decision. [SCR] 1601 in no way prohibits a gay couple from executing a will. . . . [In] other words, . . . contractual or private legal arrangements are not `rights or incidents of marriage,' because they do not come into existence automatically under state law as soon as a marriage exists. [A] living will is not a `right or incident' of marriage."[37]
Supporters of the amendment agreed that subsection (b) would accord onlyto marriages those statutory and judicially created rights associatedwith the marital relationship.[38]
 When the electorate voted on the measure in April 2005, theexplanatory statement on the ballot acknowledged this intent:
 "The proposed constitutional amendment also would prohibit the state from recognizing any other legal relationship that would entitle the parties in the relationship to the rights or incidents of marriage."[39]
In view of the legislative history of the Marriage Amendment, it appearsthat the Amendment prohibits the State from recognizing non-maritalrelationships as being entitled to the legal rights and responsibilitiesaccorded by common law and statute to married couples. However, theMarriage Amendment does not preclude private employers from offeringemployee benefits to the partners of employees.
 As mentioned previously, an ordinance conflicts with a statute if itpermits something that is forbidden by the statute.[40] Applying thistest, it is our opinion that proposed Ordinance No. B does not conflictwith the Marriage Amendment because the ordinance does not permitsomething forbidden by the Marriage Amendment. The latter prohibits theState from recognizing non-marital relationships as being entitled tothe "rights or incidents of marriage." The proposed ordinance, by itsterms, "creates no legal rights, other than the right to have theregistered domestic partnership included in the City's Domestic PartnerRegistry."[41] This right of registration is not one of the "rights orincidents of marriage" contemplated by the Marriage Amendment. As thisproposed ordinance does not attempt to imbue non-marital relationshipswith those statutory and common law rights accorded to the maritalrelationship, we find no conflict with the Marriage Amendment.
B. The Marriage Amendment/Preemption Analysis Whether the State, by virtue of the Marriage Amendment, has pre-emptedthe field to the exclusion of any local legislation depends upon thelanguage, the purpose, and scope of the Marriage Amendment.[42]In Missouri Pacific Railroad v. Board of Greeley CountyComm'rs,[43] the Court enunciated the State's authority and rationalefor preemption:
 "The legislature may reserve exclusive jurisdiction to regulate in a particular area when an intent is clearly manifested by state law to pre-empt a particular field by uniform laws made applicable throughout the state.
 "The rule denying power to a local body when the state has pre-empted the field is a rule of necessity based upon the need to prevent dual regulation which would result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only on the language of the statutes, but upon the purpose and scope of the legislative scheme."[44]
By utilizing uniform laws, the State is able to preempt cities fromacting in a variety of circumstances:
 "The legislature with some frequency has pre-empted home rule by passage of uniform laws that also contain preemptive language. Some uniform laws, however, do not need to contain any pre-emptive language because, by simply prohibiting actions like the levying of certain types of tax or the licensure or regulation of certain activities, they expressly forbid local action in the area."[45]
 Clearly, the Marriage Amendment is a uniform law applicable throughoutthe State and, as such, preempts cities from enacting ordinances thatpurport to recognize non-marital relationships as being entitled tothose statutory and common law rights and responsibilities accorded tothe marital relationship. However, as we have indicated previously,proposed Ordinance No. B does not attempt to accomplish this feat.Therefore, in the absence of uniform legislation prohibiting cities fromestablishing domestic partnership registries, or from legislating in thearea of domestic partnerships generally, the Marriage Amendment does notpreempt the City of Lawrence from establishing a domestic partnershipregistry as described in proposed Ordinance No. B.
 We note that in at least three other jurisdictions[46]appellate courts have considered the issue of preemption and domesticpartnerships.
 In Devlin v. City of Philadelphia,[47] the City extended itsanti-discrimination prohibitions in employment and public accommodationson the basis of marital status to "life partners." The definition of"marital status" was amended to include "life partner." City taxpayers,in a declaratory judgment action, argued that the Commonwealth's lawsregulating marriage, including a statute[48] similar to Kansas'Marriage Amendment, preempted the City from creating a new maritalstatus. Finding that the City did not legislate in the area of marriageby attempting to "imbue Life Partners with the myriad of rights andresponsibilities that the Commonwealth's domestic relations laws imparton married individuals,"[49] the Pennsylvania Supreme Court found nopreemption and upheld the ordinance.
 In Lowe v. Broward County,[50] the county's attempt to providecounty employment benefits to the domestic partners of county employeeswas challenged on preemption grounds. As in the Devlin case, Florida hada similar statute invalidating same-sex marriages as well as"relationships between persons of the same sex which are treated asmarriages in any jurisdiction."[51] The Florida appellate courtconcluded that the county was not preempted because the county'slegislation did not create a marriage-like relationship in contraventionof the statute:
 "The statute is directed at same sex marriages, with all the rights and obligations of traditional marriages, or their equivalent by any other name. The [Domestic Partnership] Act is not limited to persons of the same sex. The Act provides benefits to domestic partners. It does not create that plethora of rights and obligations that accompany a traditional marriage."[52]
Our conclusion is consistent with the rationale of these cases.
IV. "Local affairs and government"/Regulation of marriage Before we leave the area of home rule, we address the issue of whethera domestic partnership registry exceeds the City's ability to legislateonly in the area of its "local affairs and government."[53]
 Kansas appellate courts have been reluctant to curtail the ability ofa city to legislate by narrowly construing the "local affairs"provision. The seminal treatise on home rule addressing thissubject,[54] cited in numerous appellate court decisions,[55]finds the distinction between local and statewide matters not capable ofpractical application:
 "No ordinance deals with an exclusively local matter and no statute regulates a matter of exclusively state concern. Instead, the interests of the municipality and the state are nearly always concurrent. [Although] the Kansas amendment speaks of empowering cities to determine their "local affairs and government," this phrase should not be rigidly construed as a limit on local initiative. Even if an ordinance has extraterritorial effects that make its impact other than "purely local," the ordinance should stand if not in conflict with a state statute."[56]
In another treatise on home rule,[57] the author concludes that thedistinction between local and state affairs is "unnecessary" because theLegislature can trump an attempt by a city to intrude in state mattersby enacting a uniform law:
 "Inasmuch as Kansas cities may perform such functions as are not forbidden by uniform law applicable to all cities, judicial determination of what constitutes local affairs and government and what constitutes state affairs appears to have become unnecessary. The criterion for determining the legality of local action in either local or state affairs is whether the state legislature has already acted by uniform law applicable to every city. If the state has so acted, local action is thereby precluded. [It] seems a paradox that under a provision intended primarily for home rule, unless forbidden by uniform law applicable to all cities, cities may initiate legislation on state matters."[58]
In City of Junction City v. Griffin,[59] the Court addressed whether acity could charter out of the Kansas Code of Procedure for MunicipalCourts. One of the arguments marshaled by the defendant was that theCode was a matter of statewide concern that should be left undefiled bycities:
 "A strong argument is made that a code of procedure in municipal courts is a matter of statewide concern and should not be left to determination by local government. We are inclined to agree, but the language of the constitutional amendment, which empowers cities to determine `their local affairs and government,' was never intended as a limitation on the power, so as to restrict it to matters of strictly local concern.
 "So, even if a legislative enactment by the State addresses a matter which may be considered of statewide concern, a city remains free to take legislative action by charter ordinance concerning the same matter unless the legislative enactment by the State applies uniformly to all cities. [The] legislature may foreclose municipal legislative action only by an enactment of uniform application to all cities."[60]
The only Kansas appellate court decision[61] striking an ordinance onthe basis that the city exceeded its ability to address its "localaffairs" occurred when the City of Kansas City attempted to require theKansas Board of Regents to abide by city building codes. The Courtlimited its holding, which has been distinguished by subsequentdecisions,[62] to the facts of the case.[63]
 We are also mindful of appellate court decisions from otherjurisdictions that have upheld local domestic partnership registriesagainst challenges that the regulations exceeded the jurisdiction'sability to govern its local affairs.[64]
 In two cases from Illinois and Florida,[65] the City of Chicago andBroward County, Florida established domestic partnership registriessimilar to the one proposed by the City of Lawrence, except that theregistries in those jurisdictions were created for a more ambitiouspurpose than proposed Ordinance No. B because registration triggered theextension of city and county employment benefits to the partners ofcity/county employees.
 Both regulations were challenged on the basis that they exceeded thehome rule authority extended to local governments because theregulations intruded in the arena of domestic relations which, it wasargued, is the sole prerogative of the State. In both cases, theappellate courts determined that extending employee benefits did notinterfere with the State's ability to create and define the maritalrelationship:
 "The law of domestic relations is one matter reserved for the state alone. (Citations omitted.) The issue in this case is whether the [Domestic Partnership] Act improperly legislates in the area of domestic relations.
 "The Act does not legislate within that domestic relations zone that is reserved for the State. The [Domestic Partnership] Act does not curtail any existing rights incident to a legal marriage nor does it alter the shape of the marital relationship recognized by Florida law. [Domestic] partners under the [Act] . . . do not . . . enjoy the numerous additional rights reserved exclusively to partners in marriage.
 [For] these reasons, we conclude that the Act does not intrude to a substantial degree into a matter inherently reserved for the state alone."[66]
While we recognize the State's sole prerogative to regulate the maritalrelationship,[67] in light of the Kansas appellate courts' reluctanceto curtail a city's ability to determine its localaffairs[68]and the aforementioned decisions from other jurisdictions,it is our opinion that the City of Lawrence is not intruding upon theState's prerogative by establishing a domestic partnership registry asenvisioned by proposed Ordinance No. B.
V. "Local affairs and government"/Extraterritorial Effect Another facet of the "local affairs" conundrum is that domesticpartners, regardless of residence, can avail themselves of the registry.Thus, a couple residing in the City of Topeka or the City ofWilliamsport, Pennsylvania could, if the other requisites are met,register their partnership in the City of Lawrence under the proposedOrdinance No. B.
 As the Home Rule Amendment authorizes cities to regulate only in their"local affairs and government," the proposed ordinance arguably runsafoul of this limitation. Barkley Clark, the author of the previouslymentioned treatise on home rule,[69] addressed the propriety ofordinances that have an effect outside of a city's boundaries.
 "Even if an ordinance has extraterritorial effects that make its impact other than `purely local,' the ordinance should stand if not in conflict with a state statute. [However] the court should . . . be wary of ordinances which may not `conflict' with statutory law but which have a substantial impact on interests outside the boundaries of the municipality. After all, these interests may not be represented in city legislative deliberations, and municipal parochialism should not, in the name of home rule, be allowed to trample over adversaries unable to protect themselves."[70]
In determining whether proposed Ordinance No. B has the kind ofextraterritorial effect that would offend the Home Rule Amendment, wereview the ordinance promulgated by the City of Cleveland Heights, Ohiowhich is the model for the City of Lawrence's ordinance.
 When a citizen challenged the Cleveland Heights ordinance on the basisthat it exceeded the city's home rule authority,[71] the Ohio Court ofAppeals considered whether the city's domestic partnership registry,which allowed registration by residents and nonresidents alike, violatedOhio's home rule provision limiting a city's authority to regulate onlyin the area of "local self-government."[73]
 In determining whether municipal legislation related solely to theinternal affairs of the municipality, the appellate court reviewedwhether the result of the legislation had an extraterritorialeffect:
 "Where a proceeding is such that it affects not only the municipality itself but the surrounding territory beyond its boundaries, such proceeding is no longer one which falls within the sphere of local self-government but is one which must be governed by the general law of the state.
 "To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered.
 "Here, the registry affects only the municipality itself and has no extraterritorial effects. As the trial court found: `The city allows residents and nonresidents alike to register. However, the city . . . confers no benefit, right or obligation upon those registering. The taxpayers of the city incur no cost since the registering couples pay a fee to cover the entire cost of the registry. [Foreign] jurisdictions are not bound to acknowledge the registry or to confer any rights or obligations. Residents and nonresidents are free to recognize the declaration, but no other city is obligated to take notice. The registry does not create any result, either within the city or outside its territory, other than the mere existence of names on a list. Therefore, the court . . . finds the city of Cleveland Heights Domestic Registry to be an act of self-governance.'"[74]
The Ohio Court of Appeals agreed with the trial court's conclusion andupheld the ordinance creating the registry.
 In the absence of guidance from our Kansas appellate courts, we do notknow whether a court would be persuaded by the rationale expressed inthe Cleveland Heights decision. Arguably, the registry proposed in theCity of Lawrence's ordinance is simply a list of names of unmarriedcouples including same-sex couples. Some may register simply to make astatement that they are mutually committed to each other. Others mayregister in order to obtain employment benefits bestowed by privateorganizations that extend such benefits to the partners of theiremployees. While the registry has an extraterritorial effect in that itgives couples, irrespective of residence, the legal right to registertheir partnership, no other right is bestowed and no governmental orprivate organization is required to honor or give credence to it.
 On the other hand, depending upon how a Kansas appellate court defines"local affair," such court could conclude that by bestowing a right ofregistration upon unmarried couples residing outside the City ofLawrence, the ordinance no longer deals with a matter that is local incharacter but, rather, has an impact that extends beyond the City'sboundaries by giving unmarried couples, including same-sex couples, theopportunity to procure governmental acknowledgment of theirrelationship. In that sense, the City's registry, arguably, operates asa nationwide governmental registry for same-sex couples.
 Should the City wish to avert a challenge that the ordinance exceedsthe City's ability to govern its local affairs, the City may want toconsider imposing a city residency requirement for registration.
 VI. Conclusion
 We readily acknowledge that the legal propriety of domesticpartnership registries is an area unchartered in Kansas law and,consequently, a Kansas appellate court could arrive at a conclusiondifferent from the opinion expressed herein.
 We also note that our opinion is confined to the registry contemplatedin proposed Ordinance No. B and does not address whether a city canextend health insurance and other employment-related benefits to thedomestic partners of its employees.
 Given the dearth of guidance by the Kansas appellate courts, we arepersuaded by the appellate court decisions from the jurisdictions thathave considered and rejected challenges to domestic partnershipregistries based on home rule considerations of preemption and conflict.Therefore, it is our opinion that proposed Ordinance No. B does notconflict with nor is it preempted by the Marriage Amendment or thestatutes establishing the marital relationship. Should the Legislaturewish to preclude cities from establishing such registries, it can do soby enacting uniform legislation that is preemptive in nature.[75]
 However, in determining whether the proposed ordinance is within the"local affairs" of the City of Lawrence, we recognize that the registryprovides, arguably, a governmental nod to same-sex relationships byestablishing a right of registration for couples meeting therequirements of the ordinance, regardless of residency. To the extentthat the registry is available to nonresidents of the City of Lawrence,it is our opinion that the ordinance extends beyond the purview of theCity's "local affairs," and, as such, may be found to violate the HomeRule Amendment. Should the City of Lawrence impose a city residencyrequirement, we believe that the ordinance would pass muster under theHome Rule Amendment.
 Sincerely,
Paul J. Morrison, Attorney General
 Mary Feighny, Assistant Attorney General
[1] Kan. Const. Art. 15, § 16.
[2] Ordinance No. B, § 10-201.
[3] K.S.A. 23-102.
[4] Ordinance No. B, § § 10-204, 10-205(A).
[5] Id. at § 10-206.
[6] Id. at § 10-207.
[7] Minutes, Board of Commissioners/City of Lawrence, January 9, 2007.See Testimony of City of Lawrence Mayor Mike Amyx/House Committee onFederal State Affairs/2007 H.B. 2299 (February 15, 2007).
[8] Id. at p. 20.
[9] Kansas City, Missouri athttp://cityclerk.kcmo.org/liveweb/content/content.aspx?id=9; St. Louis,Missouri Ordinance No. 64401; Iowa City, Iowa No. 2-6-1 et seq.;Boulder, Colorado Ordinance No. 7416; Minneapolis, Minnesota OrdinanceNo. 142-10 et seq.; Madison, Wisconsin Ordinance No. 3.23 et seq.;Milwaukee, Wisconsin Ordinance No. 111-1 et seq.; Oak Park, IllinoisOrdinance No. 2-10-13; Chapel Hill, North Carolina Ordinance No.95-4-24; Seattle, Washington Ordinance No. 4.24.005.
[10] City of Cleveland Heights, Ohio Ordinance No. 181.01 etseq.
[11] City of Cleveland Heights, ex rel. Hicks v. City of ClevelandHeights, 832 N.E.2d 1275 (Ohio, 8th Dist.2005).
[12] Kan. Const., Art. 12, § 5(b).
[13] Heim, Home Rule Power for Cities and Counties in Kansas, 66 J.Kan. Bar Ass'n 26, 29 (1997).
[14] Kan. Const., Art. 12, § 5(c).
[15] 269 Kan. 670 (2000).
[16] Id. at 673. (Emphasis added, internal citationomitted).
[17] McCarthy v. City of Leawood, 257 Kan. 566, 569 (1995).
[18] Home Builders Assn. of Greater Kansas City v. City of OverlandPark, 22 Kan.App.2d 649, 657 (1996), citing City of Junction City v.Lee, 216 Kan. 495 (1975).
[19] Id. at 22 Kan.App.2d 657-58.
[20] State of Kansas ex rel. Kline v. Unified Board of Commissionersof the Unified Government of Wyandotte County/Kansas City, Kansas etal., 277 Kan. 516, 526 (2004); Executive Aircraft Consulting Inc. v.City of Newton, 252 Kan. 421, 424 (1992); City of Junction City v.Griffin, 227 Kan. 332, 336 (1980).
[21] But see 2007 H.B. 2299 ("[n]o city . . . shall enact any locallegislation . . . which creates a domestic partner registry. . ..")
[22] K.S.A. 2006 Supp. 23-101 et seq. address the requirements of themarriage contract, its solemnization, marriage licenses, records, andthe validity of marriages contracted outside of the state. K.S.A.60-1601 et seq. govern divorce, property division, child custody andsupport.
[23] Emphasis added.
[24] See Heim, Home Rule Power for Cities and Counties in Kansas, 66J. Kan. Bar Ass'n 26, 42 (1997) ("[c]ities must comply with otherprovisions of the Kansas Constitution in their exercise of homerule").
[25] See Cook Kansas's Defense of Marriage Amendment: The ProblematicConsequences of a Blanket Nonrecognition Rule on Kansas Law, 54 U. Kan.L. Rev. 1165 (May, 2006).
[26] Goodrich v. Dept. of Public Health, 798 N.E.2d 941 (Mass. 2003);Baker v. Vermont, 744 A.2d 864 (Vt. 1999); Baehr v. Lewin, 852 P.2d 44(Ha. 1993). See also Lawrence v. Texas, 539 U.S. 558 (2003). Minutes,House Committee on Federal State Affairs, Jan. 20, 2005, Attachment 5;Minutes, House Committee on Federal State Affairs, Jan. 25, 2005,Attachment 4 (Testimony of Law Professor Kris Kobach).
[27] K.S.A. 2006 Supp. 23-101.
[28] Minutes, House Commmittee on Federal State Affairs, February11, 2004, Attachment 2; Minutes, House Committee on Federal StateAffairs, February 17, 2004, Attachment 9.
[29] Journal of the Senate, 1547, 1554 (March 25, 2004).
[30] Journal of the Senate, 43 (Jan.13, 2005).
[31] Journal of the House, 101(Feb. 1, 2005).
[32] Journal of the House, 104-108 (Feb. 2, 2005).
[33] Minutes, House Committee on Federal State Affairs, January 20,2005, Attachments 1 and 3.
[34] Minutes, House Committee on Federal State Affairs, January 25,2005, Attachment 1.
[35] Id. See Tennessee Attorney General Opinion No. 04-066 (statuterecognizing a marriage of one man and one woman as "the only legallyrecognized marital contract in this state in order to provide the uniqueand exclusive rights and privileges to marriage" does not preventprivate employers from voluntarily extending employee benefits topartners of employees in same-sex relationships).
[36] Minutes, House Committee on Federal State Affairs, January 25,2005, Attachment 1.
[37] Minutes, House Committee on Federal State Affairs, January 25,2005, Attachment 4 (emphasis added.)
[38] Minutes, House Committee on Federal State Affairs, January 25,2005, Attachments 1, 3, 4; Minutes, House Federal State Affairs,January 27, 2005, Attachment 1. The federal Government Accounting Office(GAO) determined, in 2004, that there were 1,138 federal statutesinvolving the rights, responsibilities and privileges that appear to berelated to the marital relationship. An example of a judicially createdright is the common law doctrine of "necessaries" that obligates eachspouse to pay the "necessaries" of the other. St. Francis RegionalMedical Center v. Bowles, 251 Kan. 334 (1992).
[39] L. 2005, Ch. 211.
[40] Home Builders Assn. of Greater Kansas City v. City of OverlandPark, 22 Kan.App.2d 649, 657 (1996), citing City of Junction City v.Lee, 216 Kan. 495 (1975).
[41] Ordinance No. B, § 10-206.
[42] State ex rel. Kline v. Board of Comm'rs of Unified Gov't ofWyandotte Co./Kansas City, Kansas, 277 Kan. 516, 530 (2004), citingMissouri Pacific Railroad v. Bd. of Greeley County Comm'rs,231 Kan. 225, 228 (1982).
[43] 231 Kan. 225, 227-28 (1982).
[44] Id. (emphasis added).
[45] Heim, Home Rule Power for Cities and Counties in Kansas, 66 J.Kan. Bar Ass'n 26, 35 (1997). For examples of city activities preemptedby state law, see Heim, Home Rule: A Primer, 74 J. Kan. Bar Ass'n26, footnote 89 (2005); Heim, Home Rule Power for Cities and Counties inKansas, 66 J. Kan. Bar Ass'n 26, footnote 73 (1997).
[46] Devlin v. City of Philadelphia, 862 A.2d 1234 (Pa. 2004); Heinsmav. City of Vancouver, 29 P.3d 709 (Wash. 2001); Lowe v. Broward County,766 So.2d 1199 (Fla. 2000). See also Slattery v. City of New York,697 N.Y.S.2d 603 (1999).
[47] 862 A.2d 1234 (Pa. 2004).
[48] 23 Pa. C.S. § 1704 ("[i]t is hereby declared to be the strong andlongstanding public policy of this Commonwealth that marriage shall bebetween one man and one woman. A marriage between persons of the samesex which was entered into in another state . . . even if valid whereentered into, shall be void in this Commonwealth").
[49] 862 A.2d at 1244.
[50] 766 So.2d 1199 (Fl. 2000).
[51] Section 741.212, Florida Statutes (1999).
[52] 766 So.2d at 1208. But see Nat'l Pride At Work v. Governor ofMichigan, 2007 WL 313582 (Mich.App.) (constitutional amendment that"the union of one man and one woman in marriage shall be the onlyagreement recognized as a marriage or similar union for any purpose"precludes local governmental units from extending employment benefits todomestic partners of employees).
[53] Kan. Const., Art. 12, § 5(b).
[54] Clark, State Control of Local Government in Kansas:Special Legislation and Home Rule, 20 Kan. L.Rev. 631(1972).
[55] State ex rel. Kline v. Board of Comm'rs of Unified Gov't ofWyandotte Co./Kansas City, Kansas, 277 Kan. 516 (2004); Kansas CityRenaissance Festival Corp. v. City of Bonner Springs, 269 Kan. 670(2000); State ex rel. Franklin v. City of Topeka, 266 Kan. 385 (1998);Missouri Pacific Railroad v. Bd. of Greeley County Comm'rs, 231 Kan. 225(1982); City of Junction City v. Griffin, 227 Kan. 332 (1980); State exrel. Schneider v. City of Kansas City, 228 Kan. 25 (1980).
[56] Note 54 at p. 662.
[57] Vanlandingham, Municipal Home Rule in the United States, 10William and Mary Law Review, 269 (Winter, 1968).
[58] Id. at 302.
[59] 227 Kan. 332 (1980).
[60] Id. at 336-37 (internal citation omitted).
[61] State ex rel. Schneider v. City of Kansas City, 228 Kan. 25(1980).
[62] Note 55.
[63] 228 Kan. at 33. ("It would be impossible to draw a linedelineating between local affairs and those which encompass an expandedor statewide application which would be applicable to all situationswhich might arise. [Our] decision . . . is limited to the parties andthe factual situation before us.")
[64] Lowe v. Broward County, 766 So.2d 1199 (2000); Crawford v. Cityof Chicago, 710 N.E.2d 91 (1999). See also Tyma v. Montgomery County,Md., 801 A.2d 148 (Md. 2002).
[65] Id.
[66] 766 So. 2d at 1205-06. The Court considered and disregarded theeffect of a Florida statute prohibiting the State's politicalsubdivisions from giving effect to "any public act . . . respectingeither a marriage or [a] relationship not recognized" by the State.Relationships not recognized by the State include same sex relationships"treated as marriages in any jurisdiction." § 741.212, Florida Statutes(1999).
[67] Kan. Const., Art. 15, § 16; K.S.A. 2006 Supp. 23-101 et seq.; Inre Estate of Gardiner, 273 Kan. 191, 215 (2002) ("[t]he legislature hasdeclared that the public policy of this state is to recognize only thetraditional marriage between `two parties who are of the opposite sex,'and all other marriages are against public policy and void"); State v.Walker, 36 Kan. 297 (1887) (the legislature has full power . . . toprescribe reasonable regulations relating to marriage). See also Maynardv. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888) ("[m]arriage. . . has always been subject to the control of thelegislature").
[68] Kan. Const., Art. 12, § 5(d).
[69] Note 54.
[70] Id. at 662, 677 (emphasis added). See Attorney General OpinionNo. 89-139 (ordinance authorizing city to lease and operate prisonoutside city boundaries exceeds home rule authority/substantialextraterritorial impact on non-city residents); Attorney General OpinionNo. 87-17 (cities have no authority to impose administrative duties onstate agency; not a matter of local concern within the meaning ofArticle 12, Section 5 of the Kansas Constitution); Attorney GeneralOpinion No. 85-152 (city cannot authorize county to hold bindingelection); Attorney General Opinion No. 82-277(ordinance imposingeligibility requirement for state office holder not a `localaffair').
[71] City of Cleveland Heights, ex rel. Hicks v. City of ClevelandHeights,[72]
[72] 832 N.E.2d 1275 (Ohio Ct. of App. 2005).
[73] Ohio Const., Art. XVIII, § 3.
[74] 832 N.E.2d at 1277.
[75] See 2007 House Bill 2299.